UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

    - against -               S1 12 Cr. 505 (GBD)

SATNARINE SEEBACHAN,

         Defendant.

- - - - - - - - - - - - - - - -x


# MEMORANDUM OF LAW IN OPPOSITION
# TO GOVERNMENT'S MOTION IN LIMNINE
(An Application To Present Evidence of Unexplained Wealth
and Other Prejudicial Bad Acts)


                 Anthony L. Ricco, Esq.
                 Attorney For Satnarine Seebachan
                 20 Vesey Street, Suite 400
                 New York, New York 10007
                 (212) 791-3919

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

                                        12 Cr. 505 (GBD)

        - against -

SATNARINE SEEBACHAN,

                Defendant.

- - - - - - - - - - - - - - - - -x

<u>Preliminary Statement</u>

        This memorandum of law is submitted in opposition of the
government's omnibus style motion in limnine, dated September 11,
2013, which seeks the introduction of irrelevant and highly
prejudicial conduct and information. Citing a string of unrelated
cases as authority, the government contends, without establishing
a proper evidentiary nexus, that it be permitted to introduce
evidence of Mr. Seebachan's tax returns, banking records to
establish unexplained wealth.  The government also seeks to
preclude the defendant from testifying to the available cash he had
on hand and the full scope of the government's investigation of
others at Bronx Sheperds Restoration.  In addition, the government
seeks to introduce several specific acts pursuant to Fed. Rules of
Evid. Rules 405(a) and 608(b) to challenge evidence of good
reputation by the defendant.  Finally, the government seeks to
introduce evidence of statements made by Mr. Seebachan's during an
April 15, 2010 proffer session with the government, should he offer
evidence or testify in a manner inconsistent with or contrary to

the statements made during the proffer session.

Statement of Facts

The single count indictment in this case charges that Satnarine Seebachan, in his position as an employee of a not-for-profit organization, with engaged in corrupt activities in violation of 18 U.S.C. 666(a)(1)(B) (Theft of Concerning Programs Receiving Federal Funds).

The indictment alleges that Satnarine Seebachan utilized his position as an administrator at Bronx Sheperds, a not for profit organization which provided federally funded home improvement and housing restoration in the Bronx, New York, to demand or solicit bribes to influence the rewarding of contracts to vendors that submitted bids to perform the restoration services.

To support it's theory, the government subpoenaed bank and tax records of Bronx Sheperds, along with the bank, credit card and tax records of Satnarine Seebachan.  The government also subpoenaed bank and tax records and conducted interviews dozens of individuals who have worked as contractors for Bronx Sheperds.

<u>Government Seeks To Present Evidence of Unexplained Wealth</u>

The government's application which seeks to introduce evidence of Mr. Seebachan's banking records, credit card records and tax returns to purportedly show he did not have sufficient cash to pay for home improvements is completely irrelevant to the government's theory as set forth in this indictment and substantially

2

prejudicial to Mr. Seebachan.  The government's theory in this case, is simple and uncomplicated.  The government contends that Mr. Seebachan used his position at Bronx Sheperds Restoration to demand bribes from various contractors.

According to the governments motion, the solicited bribes were <u>not</u> paid or delivered in the form of cash payments or a cash kickbacks.  Instead, the government claims that Mr. Seebachan, who in 2005 purchased a new home in Glen Cove, Long Island, demanded and received free labor and discounted luxury home improvement (luxury concrete improvements and marble) from various contractors. According to the government and as set forth in indictment, these contractors were then promised by Mr. Seebachan that he would help the contractors win favorable subcontracts from Bronx Sheperds Restoration.  See, Indictment, Count One, ¶ 11 and 15.  As such, there is absolutely no evidentiary nexus between Mr. Seebachan's financial status and the bribery scheme alleged in the indictment.

## The Defense at Trial

On April 15, 2010, Mr. Seebachan met with the government prosecutors and investigators.  During that interview, Mr. Seebachan, in the presence of counsel, fully acknowledged and admitted, *inter alia* (1) that he migrated from Trinidad as a young adult and was a twenty year employee of Bronx Sheperds Restoration Corp; (2) that Bronx Sheperds Restoration Corp, *inter alia*, administered two federally funded programs (the Weatherization

Assistance Program and the Home Program) which subcontracted out hundreds of thousands of dollars per year to various contractors; (2) that contracts were awarded as a result of a bidding process; (3) that his job responsibilities at Bronx Sheperds included, *inter alia*, the administration of the Weatherization Assistance Program and the Home Program; (4) that in the discharge of his duties, he had a decisive, but not exclusive, role in deciding which contractors were awarded subcontracts; (5) that at the end of 2005 he purchased a home in Glen Cove, Long Island; (6) that several workers from at least three contractors, who bid on contracts under the Bronx Sheperds Weatherization Assistance Program and Home Program, did *in fact* work at his home; and (7) that the contractors purchased supplies (including cement and marble) at his request from various suppliers using their contractors discounts; and (8) that these materials were used to make improvements on his Glen Cove home.

Mr. Seebachan, however, stated then, and shall present at trial, that the work performed and/or supplies purchased were <u>not</u> as a *quid pro quo* or otherwise based upon a promise that the contractors would receive or be awarded subcontracts from Bronx Sheperds Restoration Corp.  Mr. Seebachan made clear then and has continued to make clear that he did not violate or abuse his fiduciary duty to Bronx Sheperds Restoration Corp.  Mr. Seebachan did not make any promise or suggest any favorable consideration in

the bidding process to any of the contractors whose employees worked on his Glen Glove home.  This is a simple and uncomplicated position.   As a result, Mr. Seebachan's tax returns and other financial records are not probative of any issue in dispute in this case.   There is no need to establish unexplained wealth, through the needless, time consuming introduction of Mr. Seebachan's financial records in its opening statement or its case in chief.  Therefore, under Rule 403 the government's application should be denied.

The Government's Application Is Disingenuous

The government shall offer testimony at trial that Mr. Seebachan made several cash payments to contractors totaling nearly $20,000.00 in cash.  See, 3501-O (Grand Jury Testimony).  However, the government seeks to preclude Mr. Seebachan from providing testimony that he had thousands of dollars of cash on hand to make these payments.

On one hand, seeks to introduce Mr. Seebachan's tax returns, bank records, credit card receipts, mortgage application and other documents to establish that "the defendant did not have sufficient income to pay for his home renovations."   At the same time, and with the other hand, the government seeks preclude testimony from Mr. Seebachan that he had a substantial amount of cash in his possession leading up to and during this time period charged in the indictment.

Mr. Seebachan stated during his April 15, 2010, that he secretly brought into the United States a substantial amount of cash that was given to him by his father in Trinidad.   Mr. Seebachan stated that the cash, which greatly exceed $100,000.00 was earned by his father by selling vegetables in Trinidad.   The government does not believe Mr. Seebachan's explanation for the extraordinary amount of cash that he possessed and ultimately deposited into his bank accounts here in the United States.

The government claims that Mr. Seebachan's explanation of the origins of his cash is "convoluted" and that as a result he must be precluded from offering such testimony.   While it is true that a party must always demonstrate a good faith basis for the presentment of evidence, there is no recorded case authority which requires the prosecutor's approval of a defendants explanation for his conduct related to the case as a basis of admissibility.

Mr. Seebachan, who emigrated to the United States from Trinidad as a young adult over thirty years ago, has provided the government with an explanation of his reasons for having large amounts of cash, a portion of which was used to pay the contractors in this case.   The government, however, simply does not want to believe Mr. Seebachan, as his explanation is inconsistent with their perception of him and the theory of the case.   This position, however, does not a provide a lawful basis to preclude a defendants testimony at trial.

6

The government, however, seeks to convince a jury that Mr. Seebachan did not have the money to make the renovations to his home, and at the same time, seeks to preclude the jury from hearing from Mr. Seebachan that he, *in fact*, did have more than enough cash to pay for the renovation work.

## The Defendant's ability to Pay for the Renovations is Irrelevant

As stated above, in this case the issue of whether Mr. Seebachan had money to pay for the renovations is not a factor in whether a bribery was committed in this case.

First of all, it is no legal defense to a violation of 18 U.S.C.§ 666(a)(1)(B) that since the charged defendant did not need the bribe, he is not guilty of bribery.  Moreover, Mr. Seebachan has not and is not advancing a theory at trial that "since he could afford the renovations with his cash on hand, he did not solicit or demand a bribe."  Nor is Mr. Seebachan advancing a theory, "that out of financial desperation" he sought the help of contractors.

The improvements to his home were luxury improvements not necessities.  Assuming, *in arguendo*, that such an argument was advanced there is no necessity defense to a violation of 18 U.S.C. §666(a)(1)(B).

In this case, Mr. Seebachan stated to government prosecutors during the April 15, 2010 proffer session that he, *in fact*, paid the workers that worked on his Glen Cove home and that he, in fact, paid the contractors approximately $20,000.00 for the renovation

materials.

Mr. Seebachan's April 15, 2010 statements were corroborated, in part, by statements made by the governments witness Fortis Papadatis, the contractor for Verizon Contracting during the course of the government's investigation. In addition to Mr. Seebachan's April 2010 statements, Fortis Papadatis, also informed the government during various proffer sessions, and also during his sworn grand jury testimony, that Mr. Seebachan paid the workers in cash and that Mr. Seebachan paid nearly $20,000.00 thousand in cash for the supplies. See, 3501-O.

In the absence of an articulated conflicting defense by Mr. Seebachan, and in the face of the statements of both Mr. Seebachan and Fortis Papadatis, the government's sole accuser of bribery, the basis of the government's application to introduce into evidence tax returns, bank records and other financial records to show unexplained wealth must be denied.[1]

Preclusion of the Origins of Cash and Government Investigation

In addition to the foregoing, the government presumably seeks to preclude Mr. Seebachan from testifying that he paid the contractors and workers in cash and also from testifying as to the source of the sizable amount of cash he had available to him to pay

---

[1]    The government has not advised the court that three other contractors who provided work at the Glen Cove home were interviewed and each denies that Mr. Seebachan made any promises to them. The defense, however, shall call at least one of these contractors at trial.

these amounts.

The grounds upon which the government seeks to preclude such testimony is compelling but compelling for all the wrong reasons. Fortis Papadatis will testify that he, in fact, received nearly $20,000.00 in cash from Mr. Seebachan and that Mr. Seebachan also separately paid Papadatis' workers directly in cash.   The government seeks to put into evidence financial records to show that Mr. Seebachan did not have cash and also to preclude him from testifying that he *in fact* had more than enough cash on hand to make these payments, as testified to by the government's witness, Fortis Papadatis.

This application is disenguous, because as stated above, on one hand, the government wants the jury to infer that Mr. Seebachan's spending habits, based upon the available tax records, banking records, credit card and other financial records, demonstrated that he could not afford the renovation work (thereby making the acceptance of the bribery more likely than not).

However, the government on the other hand seeks to preclude Mr. Seebachan from showing that he had at his disposal a substantial amount of cash during the same time, cash of which was used to pay the contractor (who stated he was paid in cash).

The government argues that Mr. Seebachan should be precluded because it does not believe his story of the origins of his cash money.   The government claims that it has conducted and

investigation and during the course of the investigation, it has interviewed the defendants mother and uncle, both whom stated that the family had a small vegetable stand and that it never made any significant money to generate the amount of cash possessed and ultimately deposited by Mr. Seebachan.  As a result, the government has declared Mr. Seebachan's story "convoluted" and that he should thereby be precluded from offering such testimony.

First of all, there is no authority which trumps a defendants Sixth Amendment Right to testify about the factual circumstances his own conduct, as related to the facts of the case.  In virtually every criminal case in which a defendant offers testimony, the government has impeached and declared the defendants testimony convoluted and not worthy of belief.  In this case, the government shall present evidence that Mr. Seebachan paid a contractor nearly $20,000.00 in cash.  Mr. Seebachan has an absolute right to not only confront this testimony but to present evidence, via his sworn testimony, on the same subject matter.

Second, the government has misrepresented it's own investigation in it's effort to seek preclusion of the defendant's testimony.  Buried in the 3500 materials, are the handwritten notes of the interview with the defendant's uncle, Motilal Sadusingh.[2]  In the agent's notes is a statement that completely

---

[2]     Government has not provided the defense with any interview notes of the defendant's mother.

contradicts the government proffer that Mr. Seebachan's father's vegetable business in Trinidad "never made and significant amount of money."

Buried deep in the agent's handwritten notes, is a statement by the uncle that the vegetable selling business of the Mr. Seebachan's father earned $25,000.00 United States Dollars per year and that the father had income from other employment.

<u>Government Seeks To Invoke Fed R. Evid 405(a) and 608(b)</u>

The government invokes Fed. R. Evid. 405 (a) and 608(b). Should the defendant seek to admit character evidence, through reputation or opinion testimony, concerning his good character and *good* professional reputation, the government seeks to cross examine those witnesses with relevant specific instances of conduct by the defendant.  The government intends to seeks to conduct the same examination should the defendant offer such testimony on his own behalf.

Satnarine Seebachan does not intend to offer any character witnesses nor offer any testimony or opinion evidence about his reputation in the community for truthfulness.  However, the government is aware that Satnarine Seebachan has an outstanding twenty year record of professional accomplishments at Bronx Sheperds and that each of its witnesses is very much aware of those accomplishments.

Indeed, implied in the bribery charge itself is the fact that

Satnarine Seebachan holds a position of accomplished professional responsibility at Bronx Sheperds Restoration and that he therefore had the wherewithal, authority and discretion to award favorable contracts to contractors in exchange for personal favors.

The government seeks to introduce evidence of the defendant's professional position to demonstrate that he had the ability to accomplish the bribes, but threatens to cross examine on specific instances of misconduct should the defendant (as opposed to the government) introduce evidence concerning his professional qualifications and reputation.   Similar to the government's application which seeks to preclude the defendant from offering testimony on his availability of cash that was used to make cash payments to the contractors, this application unfairly precludes the defendant from offering any testimony about his professional credentials and reputation in response to the government's theory of the case.

The court must look very closely at the government's application, as it attempts to expand an evidentiary rule to improperly apply to the facts of this case.

Rules 405(a) and 608(b) address the admission of evidence where the defendant seeks to introduce reputation or opinion "evidence of character or trait of character," not specific evidence of professional credentials and reputation related to charges in dispute.

The government has argued should the defendant place his character in evidence, e.g., through cross examination or his direct testimony or defense witnesses concerning his professional performance at Bronx Sheperds as "evidence of his good character," it will seek to introduce by affirmative evidence (1) of defendant's mortgage fraud by inflating his income on his 2005 mortgage application; (2) of a claim that his wife is involved in a disability fraud; (3) that the defendant and his wife have a "*leased*" Hummer vehicle; (4) that other contractors performed renovation work on his house at 40 Highfield Road in Glen Cove; (5) a Bronx Sheperds' contractor helped pay the down payment on his new home (a $50,000.00 bridge loan which was fully repaid to Dominick Calisto of A&C Combustion by check, when Satnarine Seebachan sold his home in Elmont, Long Island in September 2005)[3]; (6) that he signed names on behalf of contractors on bids and contracts during his employment at Bronx Sheperd's; (7) that he fabricated a bid by a contractor (Zillco) while employed at Bronx Sheperds; (8) that he, his wife and daughter took one trip during his twenty years of employment at Bronx Sheperds utilizing the Bronx Sheperds' American Express Credit card.

The government's application is an abuse of rules governing

---

[3]     The contract fee for the new home at 40 Highfield Road, Glen Cove, Long Island preceded the sale of the family home at 596 Valmont Place, Elmont, Long Island necessitating a bridge loan.  This loan was secured by check and repaid by check upon the sale of  the Elmont property.

Rules 405(a) and 608(b), as stated above these rules do not apply to professional credentials and reputation related to the charges. These rules apply to opinion testimony concerning truthfulness. Should the court decide that these rules apply to witness testimony concerning Satnarine Seebachan's professional status at Bronx Sheperds or his own testimony related to his background, history and professional growth while employed at Bronx Sheperds, the government's application must be precluded under Rule 403.

For example, Mrs. Satnarine is not involved in any disability fraud and has never been accused or charged of such conduct, other than the claims of the agents investigating Bronx Sheperds in this case.[4]   In addition, there is no evidence that the claim of disability fraud by Mrs. Seebachan's represents a specific bad act by Satnarine Seebachan and therefore is an improper line of cross examination related to his professional standing at Bronx Sheperds.

The government certainly should be permitted to impeach Satnarine Seebachan about the use of other Bronx Sheperds contractors at his home or that one contractor gave him a bridge loan, however, permitted the government to present affirmative evidence that he and his wife leased a Hummer vehicle or that he inflated his income on his mortgage application and that he took

---

[4]      During the course of the investigation of Bronx Sheperds, the agents in this case spent many hours conducting surveillance of Satnarine Seebachan and his wife while they shopped at local shopping malls, eating at local restaurants and purchasing baby clothes and baby accessories. This bizarre surveillance was permitted by the government in this case and has no nexus to the charged bribery in this case.

one authorized trip with his wife and daughter during his twenty years of services is improper under Rules 405(a) and 608(b) and/or should alternatively precluded by Rule 403.

<u>Admissibility of Statements at Proffer Session</u>

Finally, the government has argued that should Satnarine Seebachan present evidence and/or testimony contrary to statements as memorialized in the report of his April 15, 2010 interview with the government, the government will seek to introduce those inconsistent portions of the report into evidence. Consistent with the case authority in the Second Circuit, Satnarine Seebachan has no sustainable objection to this request.

<u>Applicable Law</u>

Whenever an accused presents evidence or testimony of reputation for truthfulness before a jury in the form of an opinion, on cross examination, inquiry is allowed into relevant specific instances of conduct. Fed. Rule Evid. 405(a).

A witness who testifies to the good reputation of a defendant may be asked on cross examination if he or she has heard of certain specific instances of misconduct concerning the defendant which is inconsistent with the witnesses direct testimony. The reason being that such questions go to the reliability of the witness. However, cross examination is not unlimited. See, *Michelson v. United States*, 335 U.S. 469 (1948)(impeaching questions must be

15

tested by comparison with reputation asserted), *United States v. Oshatz,* 912 F.2d 534 (2d Cir. 1990).   Courts have imposed two important limitations upon judicial discretion in admitting inquiries concerning prior misconduct: (1) a requirement that the prosecution have some good faith factual basis for the incidents inquired about; and (2) a requirement that the incidents inquired about are relevant to the character traits involved at the trial. See, *United States v. Renfro*, 620 F.2d 497 (5th Cir. 1980); See also*, United States v. Russo*, 110 F.3d 948 (2d Cir. 1997).

In addition to impeachment, the government may also introduce evidence of past bad acts pursuant to Fed. Rule of Evidence 404(b).

In *Huddleston v. United States*, 485 U.S. 681 (1988), the United States Supreme Court overruled the Second Circuit's then established rule that similar act evidence could be admitted only where the government established rule that similar act evidence could be admitted only if the government established, by a preponderance of the evidence, the defendant's commission of the act.

Under *Huddleston*, the government need only present evidence that would allow the jury to "reasonably conclude" that the defendant committed the act.   Pre-trial disclosure of similar act evidence is therefore all the more "material" to the preparation of the defense, in light of *Huddleston's* relaxation of the government's burden.

16

While the Supreme Court ruled in *Huddleston* that the District Court was not required to determine that an uncharged crime or act was proved by a preponderance of the evidence before admitting it, the Court established a four pronged test which must be satisfied before evidence of uncharged crimes are admitted.

The evidence sought to be admitted:

(1) Be offered for a proper purpose as defined in Federal Rule of Evidence 404(b); (proper purpose)

(2) Satisfy Federal Rule of Evidence 402 as enforced by Federal Rule of Evidence 104(b); (Relevant)

(3) Satisfy Federal Rule of Evidence 403 as to the probative value of the evidence outweighing its prejudicial impact;

(4) Pursuant to Federal Rule of Evidence 105 a limiting instruction can be given by the court which would properly guide the jury in the manner in which the evidence sought to introduced is to be used.

The government has failed to satisfy the requirements set froth by Supreme Court in *Huddleston*. At the outset the government has failed to establish that the (1) defendant's 2005 mortgage application; (2) the claim that his wife is involved in an ongoing disability fraud; (3) that the defendant and his wife have a "*leased*" Hummer vehicle; (4) that other contractors performed renovation work on his house at 40 Highfield Road in Glen Cove; (5)

17

a Bronx Sheperd's contractor helped pay the down payment on his new home; (6) that he signed names on behalf of contractors on bids and contracts during his employment at Bronx Sheperd's; (7) that he fabricated a bid by a contractor (Zillco) while employed at Bronx Sheperds; and that (8) he, his wife and daughter took one trip during his twenty years of employment at Bronx Sheperds have been offered for a for a proper purpose as defined in Federal Rule of Evidence 404(b), Rule 405(a) or Rule 608(b).

The admissibility of other bad act or specific act evidence in accordance with Fed. R. Evid. 404(b), Rule 405(a) or Rule 608(b) is initially a matter within the sound discretion of the trial judge. Under Rule 404(b) of the Federal Rules of Evidence, extrinsic evidence of other crimes, wrongs or bad acts, thought not permitted to show character, is admissible to establish proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Evidence admissible under Fed. R. Evid. 404(b) has become known as evidence of "bad acts," since it includes not only other crimes or wrongs but also other bad acts committed by the defendant, whether or not there has been a prosecution.  *United States v. Kaufman*, 453 F.2d 306 (2d Cir. 1971). *United States v. Coonan*, 938 F.2d 1553 (2d Cir. 1991).  In deciding whether to exclude other bad act evidence under Fed. R. Evid. 403, the trial judge is given broad discretion weigh the competing interests, since the court is in the best position to

evaluate all the circumstances   *United States v. Jamil*, 707 F.2d 638 (2d Cir. 1983).

In determining admissibility of evidence under Rule 404(b), the trial court must also determine whether; (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter at issue; (3) that the similar act was committed; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

When proof a bad act is admitted for the purpose of showing intent, the judge must decide each time whether the other instance or instances from a basis for sound inference as to the guilty knowledge of the accused.  *United States v. Brand*, 79 F.2d 605, 606 (2d Cir. 1935).  Other acts proffered to establish a defendant's intent must be clearly established and must be close enough in time to the act charged to reliably reflect intent at the time.  *United States v. Smith*, 735 F.2d 1196 (9th Cir. 1984).

While it is true that a jury may consider evidence of intent to evade taxes in one year as evidence of intent to evade payment in subsequent years, *United States v. Ebner,* 782 F.2d 1120 (2d Cir. 1986), there is no such authority to permit a jury to determine that an unlawful act establishes intent to defraud in a subsequent

year in the absence of other evidence.   It does not logically prove the subsequent event.

Evidence of other bad conduct is admissible to show, by similar acts or incidents, that the act on trial was not inadvertent, accidental, unintentional or without guilty knowledge. The prior doing of other similar acts is often useful in reducing the possibility that the at in question was done with innocent intent.

However, when the crime charged involves the element knowledge, intent, or the like, the better practice is to permit the government to show other crimes in rebuttal, after the issue has been sharpened by the defendant's giving evidence of accident or mistake, more readily than it would as part of its case-in-chief at a time when the court may be in doubt that any real dispute will appear on the issue. *United States v. Ross,* 321 F.2d 61 (2d Cir. 1962).

In this case, the government seeks to introduce evidence about Satnarine Seebachan's wife physical condition, the vehicle driven by his family and his 2005 mortgage application under the pretext that these matters are probative to his professional credentials and reputation.  The government, somehow, believes, without any other evidence in support [testimony or demonstrative] that this evidence qualifies as a prior bad act under Rule 404(b) and/or admissibility under Rules 405(a) and 608(b)(impeachment of evidence

of good character and truthfulness).

Arguably, Satnarine Seebachan's contact with other Bronx Sheperds' contractors (a valid loan and/or work at his home) and/or his conduct with preparing other bids and contracts proper impeachment during cross examination, however, this conduct is not probative of Satnarine Seebachan's general reputation for truthfulness – in the absence of other additional evidence establishing that these acts properly support a finding probative of a lack of truthfulness or that they constituted misconduct. Therefore the government's application must be denied.

<u>CONCLUSION</u>

This case requires the finder of fact to resolve two simple questions: (1) did Mr. Seebachan utilize workers from the various subcontractors to work on his home, including the receipt of discounted supplies and materials through a subcontractor; and (2) whether this done as a *quid pro quo* to assist and influence the awarding of lucrative contracts with Bronx Sheperds.

There is no dispute that individuals workers from several of the contractors that had contracts with Bronx Sheperds worked at Mr. Seebachan's home on various dates over a three year time period.  That fact is not in controversy and is not in dispute in this case.  There is no dispute that Fortis Papadatis of Verizon Contracting, was a contractor who did work with Bronx Sheperds Restoration Corp., and that Fortis Papadatis claimed he used his

21

discount to purchase cement, marble and other supplies on behalf of Satnarine Seebachan that was used to improve his home in Glen Cove, Long Island.   The simple question in this case was whether this work was done in exchange of promises made by Satnarine Seebachan. The government has sought to influence the trial with irrelevant prejudicial conduct and to constrain Mr. Seebachan from providing testimony of his access to cash and his outstanding professional credentials.   The government's application unfairly denies him a meaningful opportunity to defend the charges and present evidence without the prejudice of matters which have no relevancy to bribery or his professional conduct at Bronx Sheperds.

As a result of the reasons stated above, the government's motion in limnine should be denied at this time.

Dated: New York, New York
       September 16, 2013

Respectfully submitted,

*Anthony L. Ricco*

Anthony L. Ricco, Esq.
Counsel for the defendant
20 Vesey Street, Suite 400
New York, New York  10007
(212) 791-3919

22