D9H7SEEF

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4               v.                        12 CR 505 (GBD)

5   SATNARINE SEEBACHAN,

6                   Defendant.

7   ------------------------------x

8                                    New York, N.Y.
                                     September 17, 2013
9                                    1:00 p.m.

10

    Before:
11
                    HON. GEORGE B. DANIELS,
12
                                     District Judge
13

14                        APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    CARRIE H. COHEN
17  REBECCA MONCK RICIGLIANO
         Assistant United States Attorneys
18
    ANTHONY L. RICCO
19       Attorney for Defendant

20

21

22

23

24

25

D9H7SEEF

1          (A jury of 12 and two alternates was selected and

2     sworn)

3          THE COURT:  Be seated for a couple minutes, ladies and

4     gentlemen.  Before I send you home, I will give you the

5     preliminary instructions before we adjourn.

6          Members of the jury, at this point I'm required before

7     we start, required by law to instruct you generally concerning

8     your basic function, duties and certain rules which apply to

9     every jury, so that you will be better able to assess and weigh

10    the evidence as it's presented and reach a proper verdict.

11         Now, the trial has commenced with the selection of the

12    jury.  The next step in the trial tomorrow morning will be

13    opening statement by the government to outline for you what the

14    prosecution intends to prove by way of evidence to be presented

15    in the case.

16         After the government's attorney makes her opening

17    statement, the defendant's attorney, if he desires, may also

18    but is not required to make an opening statement.

19         Now, what counsel for either side says in an opening

20    statement is not evidence.  You may consider the opening

21    statement as a preview of what each side intends to prove by

22    way of evidence in the case.

23         After the opening statement or statements, the

24    assistant United States attorneys will present one or more

25    witnesses who will be questioned by them.  Now, this is called

D9H7SEEF

1    direct examination.

2            After the assistant United States attorney completes

3    her questioning of the witness, defense counsel will be given

4    an opportunity to question that witness.  This is called

5    cross-examination.

6            After the government has conclude the calling of its

7    witnesses and the introduction of any exhibits which are

8    admissible into evidence, the defendant may -- but is not

9    required -- to offer evidence in his own defense.

10           After both sides rest, the government's attorney will

11   make a closing argument, followed by the closing argument of

12   the defendant's attorney.  And the government's attorney will

13   then have a brief rebuttal in response.  Then I will instruct

14   you on the law, and you will retire to deliberate for the

15   purpose of reaching a verdict.

16           This is a general outline of the trial procedure.  I

17   ask you to listen carefully.  You don't need to take notes.  We

18   have a court reporter who will take all the testimony down.  If

19   you want any testimony read back during your deliberations, we

20   will bring you back in open court, and the court reporter will

21   read back those portions of the testimony.

22           Now, the evidence consists of testimony of witnesses

23   under oath and exhibits which are admitted into evidence, plus

24   any stipulations agreed upon by the attorneys.  Questions in

25   and of themselves are not evidence, therefore, you cannot infer

D9H7SEEF

1    any fact from asking the question.  It's the answer coupled

2    with the question that constitutes evidence.  For example, if a

3    witness was asked a question "Don't you own an automobile?" and

4    the witness replies "No," you may not infer from the mere

5    asking of the question that the witness does own an automobile.

6            Now, during the court of the trial, the assistant

7    United States attorney, or defense counsel, may object to a

8    question or an answer on the ground that it is somehow legally

9    improper or inadmissible.  If I sustain the objection, this

10   means I believe that the question or the answer was in some way

11   improper.  If an answer has already been given, I will instruct

12   you to disregard it and, therefore, the answer is no longer

13   evidence in the case.  If I overrule the objection, then it

14   means that the question is proper, and I will permit it to be

15   answered, or, if already answered, I will permit the answer to

16   remain as evidence in the case.

17           Now, please, do not resent the fact that an attorney

18   makes objections.  This is their duty, and do not hold it

19   against them if I rule against either side.

20           As I will explain to you in detail in my instructions

21   at the end of the case, as jurors in this case you are the sole

22   judges of the facts, and I am the sole judge of the law, and

23   you must accept the law as I give it to you, without hesitation

24   or reservation, even if you privately disagree with me.  You

25   must keep an open mind.

D9H7SEEF

1          Throughout the trial you must not converse among

2     yourselves or with anyone else upon any subject connected with

3     the trial.  You must neither offer nor express an opinion about

4     the guilt or innocence of the defendant, or reach any

5     conclusion about what the verdict should be until I finally

6     give the case to you.

7          You must not read or listen to any accounts or

8     discussions of the case in the event it's reported by

9     newspapers or other news media.

10          You must not visit or view any premises or place where

11     the offense charged was allegedly committed, or any other place

12     or premises involved in the case.

13          You must not do any research on your own, or

14     investigation about the case on your own.

15          You must decide this case solely on the evidence

16     presented at this trial.

17          You must speak to no one about the case until the

18     trial is completely ended, and you must promptly report to the

19     court any incident within your knowledge involving an attempt

20     by any person to speak with any member of the jury about the

21     case.

22          During the trial you should not speak to any of the

23     parties or lawyers involved in this case, nor any individuals

24     associated with it.  They are instructed not to speak with you,

25     so don't consider it rude if they see you outside of this

D9H7SEEF

1    courtroom and they don't acknowledge your presence.  Obviously,

2    if someone were to see you speaking to one of the parties

3    involved in the case, they might draw an improper inference

4    even though it might be a perfectly innocent conversation

5    unrelated to the case.

6              Now, ladies and gentlemen, as I say, tomorrow morning

7    the next step will be we will have the opening statement by the

8    government and an opening statement by the defense if they wish

9    to make an opening statement, and we will proceed with the

10   witnesses, and we will proceed every day until we finish the

11   case.  I think we are on schedule, and I am going to make sure

12   we stay on schedule or get ahead of schedule.

13             Tomorrow morning I'm going to ask you to be in the

14   jury room.  My law clerk is going to show you where the jury

15   room is.  As you come in, just go straight to the jury room.

16   When we know all 14 of you are there we can start.  We are a

17   team; we can't start until everyone arrives.  I'm going to ask

18   you to be there before tomorrow before 9:30.  I want to get a

19   good start the first day and see how far we are going.  If it

20   looks like we have a little extra time, we can start a little

21   later in the days beyond that, but I want to keep us on

22   schedule or get ahead of schedule before I start being more

23   flexible with the time.

24             So, I will have my law clerk take you into the jury

25   room now, give you information about how to get in contact with

D9H7SEEF

1    us if there is a problem, get information from you about how to

2    contact you if you are not here and we need to try to locate

3    you.  So, have a good evening; don't discuss the case.  Keep an

4    open mind.  I will see you tomorrow morning at 9:30, and we

5    will be prepared to begin the case at that time.

6              (Continued on next page)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

D9H7SEEF

1           (Jury not present)

2           THE COURT:  After we talked about the motions in

3    limine, the only logistical thing, Mr. Ricco, you should think

4    about first of all is there is still a possibility that

5    depending how this case develops the government -- even though

6    I restrict them with regard to the opening -- the government be

7    allowed to present -- I don't know the extent of the bank

8    records and charts and that sort of thing.

9           So, I think you should discuss with the government

10   whether or not your position is that you want me to give them

11   the leeway to present that right up front if they want to

12   present that in their case in chief, or you want to wait until

13   a rebuttal case.

14          MR. RICCO:  Well, I have thought about that, and

15   generally I would tell the government in advance that that door

16   is going to be open so you might as well go ahead, but that's

17   not the case here.

18          The defendant's defense in this case is finite.  His

19   bottom line position is that that conversation where he said he

20   would do this man favors did not happen.  And we believe that

21   99 percent of the facts in this case are not in dispute.  There

22   is not going to be any dispute that the work was done.  There

23   is not going to be any dispute that the materials were bought

24   and delivered.  All of that happened.  What is in dispute in

25   this case is whether or not Mr. Seebachen said to Mr. Papadatis

D9H7SEEF

1    that I'm going to do a favor for you, and how that happened.

2    So, we are going to spend a lot of time with their witness

3    discussing that part of his testimony.

4           And as a second point, your Honor, we ultimately

5    believe that the source of the defendant's money was irrelevant

6    to the issues at this trial.  We only responded to what the

7    government put out there.  I believe it makes no difference.

8    The question is whether or not he had this cash, which he did.

9    I don't think the government is saying he didn't have it.  He

10   did have it.  The government witnesses are not going to dispute

11   that their witnesses weren't paid in cash.  We are not going to

12   challenge that.  The witness is going to say he got cash, and

13   we are just going to say how much, when and where.  So, that's

14   it.

15          And the defendant as we sit here today intends to

16   testify, and he is going to try to stay as focused as possible

17   about what the issue is here.  So, that's pretty much where we

18   are.

19          But, your Honor, had I believed that we would cross

20   that bridge, I would just say to the government that's going to

21   happen and we might as well be right up front and deal with it.

22   But I don't think that's the case here, and I would say --

23   well, it would have to depend on something that was done during

24   our case.

25          But, Judge, I also don't believe that

D9H7SEEF

1   cross-examination opens a door, that the question on cross then

2   opens the door.  Because the government if they ask the

3   defendant, well, where did you get the money from, he's got to

4   answer the question.  If he doesn't answer the question, then

5   they get to bring out his proffer notes that he said he got the

6   money from Jamaica.  And then that doesn't open the door to the

7   bank records, the this, the that and everything, because he has

8   to answer the question posed honestly.

9            THE COURT:  Well, that's not the only thing that opens

10   the door though, so --

11            MR. RICCO:  That's correct, Judge.

12            THE COURT:  So, the reason I want to have you think

13   about that specifically is because if at some point in time

14   either the opening statement and/or your cross-examination of

15   their witnesses opens the door to that, then I'm going to let

16   the government go ahead, and I don't want you to be surprised.

17   The government has made the application that's what they want

18   to do, it's their position that they should still be able to do

19   that on their case in chief.  They say they have not only the

20   bank records but they have a chart and a witnesses that will

21   talk about the bank record.  Whether or not if we do that we

22   are going to spend that hour doing it on their case in chief or

23   hours more doing that after your case is another question, if

24   it's necessary at all.

25            But I will see how the case unfolds, and I will let

D9H7SEEF

1    them renew their application any time they think the

2    circumstances are different from what I anticipated at this

3    trial.

4              MR. RICCO:  Judge, I think that's fair.  I have

5    thought about other areas where I think the various issues

6    raised by the government would be open.

7              For example, every single witness that the government

8    is calling has a long-term professional, positive relationship

9    with the defendant, and so there is a great sort of urge to

10   then cross that witness, well, you've always had excellent

11   working blah, blah, blah, and we just have to be restrained not

12   to do that.

13             But certainly these witnesses have known the

14   defendant.  He has been there 20 years, and so he has worked

15   with them in meetings, in board meetings.  There has been a

16   great deal of work, professional work, and he has risen during

17   that time period.  So, a cross that you normally would like to

18   pursue, we just have to make a decision as to whether or not we

19   would do that and what doors it would open.  So, we are

20   thinking it through, Judge.

21             MS. COHEN:  Your Honor, just so our opening doesn't in

22   any way go against what your Honor's ruling, I think we would

23   be permitted in opening to tell the jury that they will not see

24   any evidence of any checks written to the contractor for the

25   work.

D9H7SEEF

1              THE COURT:  That's fine.

2              MS. COHEN:  I mean that has to be -- OK.

3              THE COURT:  Sure.

4              MR. RICCO:  Judge, I agree, because there are none.  I

5     mean the witness is going to say he was paid in cash, and the

6     defendant is going to say he paid in cash.  There are no

7     checks.

8              THE COURT:  Look, as long as you don't reference the

9     specific evidence and the content of the bank record, you can

10    say pretty much what you want to say about whether or not he

11    could afford it or couldn't afford it, or whether he had the

12    money or didn't have the money.  You know, you have to be

13    careful about that.

14             MS. COHEN:  Right.  I was going to say, if we open on

15    he couldn't afford it, he didn't have the money --

16             THE COURT:  They may want the bank records in.

17             MS. COHEN:  Right.  That puts us in a box because then

18    we can't deliver on what we opened on.  That's why I wanted to

19    make sure what I was going to be allowed.

20             THE COURT:  I am just trying to give you the

21    parameters and make sure that whatever -- these are tactical

22    decisions, so I want you to make tactical decisions based on as

23    much information I give you as to my approach to this so there

24    will be no surprises, and if that's the way you want to go,

25    fine, that's the way you want to go, but we will see how the

D9H7SEEF

1    case unfolds.

2         But Mr. Ricco may be correct that the issue for the

3    jury may narrow very quickly, you know, as to whether or not he

4    in fact did -- one, whether he received any work that he

5    otherwise should have paid for and he got it for nothing, and,

6    two, he did so in exchange for his indication, promise, express

7    or otherwise, that they would get a break on their contracting

8    work for the not-for-profit if they did him the favor by not

9    charging him everything they needed to charge him.

10         If the issue is beyond that, or needs to be proven

11   circumstantially rather than directly, we will see.  But, as I

12   said, you know, there is usually pretty much direct evidence of

13   that, and it doesn't need a whole lot of circumstantial

14   evidence, depending on the nature of the attack on the

15   witnesses and what is being attacked.

16         All right.

17         MS. COHEN:  Just, your Honor, your scheduling day,

18   when you take a break, lunch, just so we can schedule our

19   witnesses.

20         THE COURT:  Tomorrow, if we start at 9:30, we are

21   probably going to take a break sometime between 10:30 and 11,

22   because I have the other case, and I want to give them some

23   time.  We usually take a midmorning break and go until one

24   o'clock or just before one o'clock, take about an hour, hour

25   and ten minutes for lunch, usually about an hour and ten

D9H7SEEF

 1   minutes, come back, take a midafternoon break, and let the jury

 2   go sometime before 5 o'clock, unless we have five or ten more

 3   minutes just to finish with a witness so the witness doesn't

 4   have to come back.

 5          OK.  All right. anything else?

 6          MR. RICCO:  No, sir.  Thank you.

 7          THE COURT:  Then I will see you all tomorrow morning.

 8   I will see you at 9:25 in case there is anything else we need

 9   to do before the jury comes in.

10          (Adjourned to September 18, 2013 at 9:30 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25