UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

       - against -                                                          Docket. No. 12 Cr. 505 (GBD)

SATNARINE SEEBACHAN,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**SENTENCING MEMORANDUM (LETTER)**


                                              Anthony L. Ricco, Esq.
                                              Attorney For Satnarine Seebachan
                                              20 Vesey Street, Suite 400
                                              New York, New York 10007
                                              (212) 791-3919


Steven Z. Legon, Esq.
Of Counsel and On the Memorandum

# ANTHONY L. RICCO
*Attorney At Law*
20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007

TEL. (212) 791-3919   FAX. (212) 791-3940

STEVEN Z. LEGON, ESQ
OF COUNSEL

April 23, 2014

**FILED BY ECF**

Hon. George B. Daniels
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

   Re: **United States v. Satnarine Seebachan**
      Docket No. 12 Cr. 505 (GBD)

Dear Judge Daniels:

  This letter is written pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure. It sets forth Satnarine Seebachan's objections to the Presentence Report (P.S.R.) and his sentencing recommendation. Satnarine Seebachan requests that the court impose a non-custodial sentence or an intermitted sentence to be served on weekends, at variance with the guidelines, pursuant to the court's authority under *United States v. Booker*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553 (a).

## I. Preliminary Note

  It is a very rare occasion that a defendant is sentenced to a non-custodial sentence after a conviction by jury trial. However, such a sentence is entirely proper and within the lawful discretion of the court when it is imposed in circumstances like those present before the court. Satnarine Seebachan is an extraordinary man, husband, father and member of the community, whose single indiscretion stands in sharp contrast to a life time of achievement, commitment to his family and exceptional service to the community.

  Before the court for sentencing stands Satnarine Seebachan, is a remarkably talented man who embarked upon an extraordinary journey from his native Trinidad 28 years ago, who in the pursuit of his personal goals provided exceptional service to one of our nations

most vilified and economically depressed and dysfunctional communities - the South Bronx.

Satnarine Seebachan was one of a group of highly talented and committed individuals who, through the Bronx Shepherds Restoration Program, helped transform the housing landscape of a sprawling dysfunctional community into a vibrant residential community through housing redevelopment and home ownership revitalization. In a community which was once filled with dilapidated housing, which served as the breeding grounds for violence and drug infestation and despair, now stands redeveloped housing, where the residents have a since of hope and promise for the future. This accomplishment was made possible as a result of a group of talented professionals who, for nearly two decades, remained in the community and through the force of their talents and commitment forged a successful housing renewal program. It is without dispute that Satnarine Seebachan is individual who contributed mightily to that success and played an integral role in the achievements of Bronx Shepherds and its mission to revitalize housing in the South Bronx.

Along the path of his admirable journey, Satnarine Seebachan made one single mistake, an aberration in judgment. Satnarine Seebachan, in his role as the administrator of Bronx Shepherds' Weatherization Assistance Program and Home Program, solicited a bribe from a contractor to work on his private home, in return for a promise to assist the contractor in securing favorable contracts with Bronx Shepherds. This single transgression stands alone in two decades of otherwise exemplary service to Bronx Shepherds.

In an era where government prosecutors have pursued a sentencing policy which has resulted in the mass incarceration of the offenders in epic numbers, notwithstanding the availability of prison alternatives, Satnarine Seebachan's individual life accomplishments and background are worthy of the consideration for a non-custodial sentence. Satnarine Seebachan, who has always exhibited the qualities of a talented, committed and dignified man, is clearly a man whose character and individual life circumstances is far greater than the worst decision that he made in his life. As a result, he, and his family, are deserving of the great power and discretion of the court at the time of sentencing.

In the post-*Booker* era, the court is required to impose a sentence which is sufficient but not greater than necessary to achieve the sentencing goals of Congress. *Gall v. United States*, 552 U.S. 38 (2007). In this case, there are indeed sufficient, perhaps compelling, factors related to the history and background of Satnarine Seebachan, along with the circumstances of the offense, which justify the imposition of a non-custodial sentence at variance with the Guidelines.

2

The defendant, Satnarine Seebachan, is 53 years of age, and was born and raised near Port of Spain, Trinidad. Satnarine Seebachan is a dedicated husband and he and his wife Rita are the proud parents of two (2) outstanding children. In 1986, Satnarine Seebachan, at age 24, left a great job (a crew chief at T&Tech of Trinidad and Tobago) and his family in Trinidad, and immigrated to the United States. Like many immigrants before him, Satnarine Seebachan came to the United States in search of a new life and new opportunities not available in his native land.

Upon his arrival in the United States, Satnarine Seebachan consistently maintained employment throughout his entire adult life. Satnarine Seebachan married his sweetheart from Trinidad and together they successfully raised their family in the United States. Satnarine Seebachan has been an exceptional, doting and inspirational father to the family's two promising children. As a result of his wife's permanent disability, Satnarine Seebachan is presently the only adult who provides financial support for his family. Were this court to impose a sentence of incarceration, the resulting hardship would cause the destruction of a talented, promising and close knit family. In addition, this case also represents Satnarine Seebachan's only contact with law enforcement.

It is for the above reasons (exceptional employment history, hardship to the family and aberrational conduct) that Satnarine Seebachan requests and prays that the court impose a non-custodial sentence at variance with the sentencing guidelines. See, *Gall v. United States*, 552 U.S. 38 (2007) and *United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) (*en banc*). Satnarine Seebachan, and his family, are deserving of a non-custodial sentence, which is soundly within the power of the court. Counsel is of the strong belief that Satnarine Seebachan's history demonstrates that he would not let this court down, and that he would continue to provide love and support to his wife and his children without any future criminal conduct.

## II.   Background/Conviction by Jury Verdict

On September 23, 2013, Satnarine Seebachan was convicted after jury trial before this court on the single count of the indictment. Count one charged that Satnarine Seebachan, being an employee of Bronx Shepherds, solicited, agreed and accepted at least $5,000.00 worth of labor and supplies from and through a contractor, Fotis Papadatis, in exchange for assisting and promising to assist Fotis Papadatis in obtaining work from Bronx Shepherds Restoration Corporation in violation of 18 U.S.C. § 666(a)(1)(B).

<u>The Investigation of Bronx Shepherds Restoration Corporation</u>

During the course of an investigation into the financial activities of the Bronx Shepherds Restoration Corporation, a not for profit organization providing housing

redevelopment and residential weatherization assistance to homeowners and residents of the South Bronx, the government discovered that several contractors who had been awarded contracts through federally funded programs, had performed some remodeling work at the Glen Cove, Long Island home of Satnarine Seebachan. At the time this work was performed, Satnarine Seebachan was the director of two of Bronx Shepherds most successful restoration and improvement programs; the Weatherization Assistance Program and the Home Program.

Meeting With Federal Prosecutors and Subsequent Arrest

Satnarine Seebachan became aware of the investigation into Bronx Shepherds as early as 2004, when the business records of Bronx Shepherds were subpoenaed. As the director of the Weatherization Assistance Program and the Home Program, he was responsible for assembling and producing those records to the federal prosecutors.

In addition, on April 15, 2010, Satnarine Seebachan attended a meeting at the United States Attorney's Office for the Southern District of New York. During the meeting, which lasted two hours, the primary focus of the government prosecutors and investigators was on whether Satnarine Seebachan had knowledge of any financial impropriety or any improper conduct involving Ted Jefferson, in the administration of the Bronx Shepherds' restoration programs. In addition, the government asked Satnarine Seebachan about large amounts of cash that had been deposited into his personal bank accounts.

In response to the inquiry, Satnarine Seebachan informed the prosecutors and investigators that in the many years he worked under Ted Jefferson at Bronx Shepherds, he was not aware of a single incident where Ted Jefferson was involved in any financial impropriety involving Bronx Shepherds. In response to their questions, Satnarine Seebachan also provided the government prosecutors and investigators with the source of the large amounts of cash deposited into his personal bank account. Satnarine Seebachan informed them that the money was brought to the United States from Trinidad over the course of many years and maintained in his home. After a burglary, which was fully reported to the New York City Police Department, wherein a large amount of the cash was stolen - and in order to keep up with his rising financial costs after the disability of his wife - Satnarine Seebachan decided to deposit the cash into the bank.

The government investigators subsequently interviewed the many vendors and contractors who were awarded contracts with Bronx Shepherds, ostensibly to determine whether Satnarine Seebachan was paid cash kickbacks for awarding contracts. After many interviews, there was no evidence that Satnarine Seebachan ever solicited a cash bribe in his over twenty years of service to Bronx Shepherds. Nor was there any evidence to contradict Satnarine Seebachan's explanation for his possession of the large amounts of cash.

However, in the course of this inquiry, the government prosecutors discovered that several vendors who were awarded contracts had employees who performed remodeling work on Satnarine Seebachan' Glen Cove home.

One person - Fotis Papadatis - a fully qualified and certified contractor, informed the government prosecutors and investigators that while he did not pay Satnarine Seebachan any cash money, he was promised that his company would be awarded contracts if he assisted Satnarine Seebachan with renovation work on his home in Glen Cove, Long Island. On July 17, 2012, nearly twenty eight months after the interview with government prosecutors, Satnarine Seebachan was arrested.[1]

Satnarine Seebachan exercised his constitutional right to trial by jury. At the trial, Satnarine Seebachan elected not to testify. As stated above, on September 23, 2013, Satnarine Seebachan was convicted after jury trial before this court on the single count of the indictment.

Pursuant Rule 32(f) of the Federal Rules of Criminal Procedure, the court ordered the United States Office of Probation to prepare a Presentence Investigation Report. On December 20, 2013, the United States Office of Probation issued a report in this case.

### III.   Objections To The P.S.R. Guideline Calculation

<u>The Presentence Investigation Report</u>

In this case, the Presentence Investigation Report, (P.S.R.) determined that, under the guidelines, the total offense level is 18 with a criminal history category of I. This resulted in a guideline range of 27 to 33 months imprisonment. The conclusion reached in the P.S.R. is based upon the following guideline analysis.

<u>Total Offense Level</u>

The P.S.R. sets the base offense level for count at level 6 pursuant to Guideline § 2B1.1. Since it is alleged that the loss was $141,445.00, based upon the value of the beautification to the Glen Cove, Long Island home and the marble bills paid for by Fotis Papadatis, the P.S.R. added 10 levels to the base offense level pursuant to Guideline § 2B1.1(b)(1)(F). The P.S.R. also determined that since Satnarine Seebachan used his position

---

[1] It is significant for sentencing purposes, that Satnarine Seebachan was not charged with providing false or misleading statements during his April 15, 2010 interview with the government nor with receiving any cash from the many vendors and contractors interviewed, even those who worked on his home. See, P.S.R., ¶ 20, page 5.

5

at Bronx Shepherds for renovations to his home an additional two (2) levels was added to the base offense level, pursuant to Guideline § 3B1.1, resulting in a total offense level of 18. The total offense level of 18 and a criminal history category of I results in a guideline prison range of 27 to 33 months.

10 Level Increase Pursuant to Guideline  § 2B1.1(b)(1)(F)

Satnarine Seebachan objects to the 10 level increase to the base offense level on the grounds that the total amount is primarily based upon a flawed numerical value placed upon the renovation work that Fotis Papadatis' workers performed on Satnarine Seebachan's Glen Cove, Long Island home. In addition to the unreliable speculation used to arrive at the total amount of $144,445.00, the P.S.R. also fails to discount from the $144,445.00, the payments which Fotis Papadatis claimed to have actually received from Satnarine Seebachan, which totaled $20,000.00. See, *Trial Transcript*, page 395; 3501-A, page 1, 3501-C, page 1 and 3501G, page 2. The P.S.R. also failed to deduct the cost of the equipment ($40,000.00 for a power washer, hopper and compressor) that was purchased by Fotis Papadatis to be used not only at the Glen Cove home, but to also be used in furtherance of a plan by Fotis Papadatis to be become a regional dealer for CTI.[2] See, *Trial Transcript*, page 273. The P.S.R. also failed to deduct the other expenses and supplies that were used for the project that Fotis Papadatis claimed Satnarine Seebachan purchased directly.

The guidelines provide that when any factor important to sentencing is in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. See, Guideline § 6A1.3(a). Although the district court is not required, by either the Due Process Clause or the guidelines to hold a full blown evidentiary hearing to resolve sentencing disputes, See *United States v. Slevin*, 106 F.3d 1086, 1091 (2d Cir. 1996), there are clearly some instances where an evidentiary hearing is appropriate. See, *United States v. Fatico*, 579 F.2d 707, 713 (2d Cir. 1978); *United States v. Fatico*, 603 F.2d 707, 713 (2d Cir. 1978). The guidelines recognize that an evidentiary hearing may sometimes be the only reliable way to resolve disputed issues. See, Guideline § 6A1.3, Comment.

In this case, it is impossible for a sentencing court to reliably resolve the issue of amount of the value of the renovation work on the Glen Cove, Long Island home on the current record. First, Fotis Papadatis claims to have lost all of his financial records (hours & materials) in a mysterious flood which swept through his business offices and destroyed

---

[2] Fotis Papadatis traveled to Florida and took training classes to become trained as a concrete beautification specialists and to negotiate to become a regional dealer for CTI. The equipment was purchased as part of Fotis Papadatis plan to become a northeast regional dealer for CTI.

all of his records. Second, during his trial testimony, Fotis Papadatis included the cost of equipment he purchased from CTI, a Florida based franchise, to perform the work on the Glen Cove home. However, the equipment was not purchased solely to work on the Glen Cove home. Fotis Papadatis testified that the equipment was purchased because he was interested in becoming a regional dealer of concrete restoration work for CTI.

Fotis Papadatis testified that he purchased the equipment (power washer, hopper and compressor) to be used on other jobs and that he attended a seminar in Florida, along with his other workers to benefit himself and his company. Under those circumstances, the cost of equipment that Fotis Papadatis purchased from CTI to pursue his own business interests (an opportunity to become the northeast regional dealer for CTI and use the equipment on future job opportunities), cannot be used as a basis to calculate a loss for which Satnarine Seebachan is liable under the sentencing guidelines.[3]

As a general rule, the burden of showing the circumstances that warrant an adjustment falls on the party seeking the adjustment. See, *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992). Disputed sentencing factors need only be proven by a preponderance of the evidence. See, *United States v. Vaughn,* 403 F.3d 518, 525 (2d Cir. 2005). And, as pointed out by the government during the evidentiary hearing, the court is free to consider hearsay evidence in resolving issues in dispute. See, *Williams v. New York,* 337 U.S. 241, 247 (1949); *United States v. Martinez,* 413 F.3d 239, 243-244 (2d Cir. 2005); Fed. R. Evid., Rule 1101(d)(3). The court has broad discretion to consider information, provided the defendant is given an opportunity to respond to such evidence "in order that the court not rely upon misinformation." *United States v. Concepcion,* 983 F.2d 369, 387-88 (2d Cir. 1992). Satnarine Seebachan requests a *Fatico* hearing to the resolve the issue of the 10 level enhancement pursuant to § 2B1.1(b)(1)(F).

<u>2 Level Increase Pursuant to Guideline § 3B1.3</u>

The P.S.R. enhanced the base offense level by 2 levels for a role adjustment in the offense pursuant to Guideline § 3B1.3. The P.S.R. included an adjustment for a role in the offense on the grounds that Satnarine Seebachan "used his position at Bronx Shepherds in exchange for free home renovations and personal gain." See, P.S.R., ¶ 26, page 5.

Guideline §3B1.3 provides that if a defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission of or concealment of the offense, increase the base offense level by 2 levels. The application of the abuse of trust enhancement requires two inquires: whether the defendant occupied a

---

[3]  Concrete beautification for residential homes is not a service provided by Bronx Shepherds in or through its Weatherization Assistance Program or Home Program.

position of trust," and whether the defendant abused that position to commit or conceal his crimes. See, *United States v. Nuzzo,* 385 F.3d 109, 115 (2d Cir. 2004). The character of a defendant's position as one of trust is an issue of law, and is reviewed *de novo*; whether such a position has been used to commit or conceal the offense is a question of fact, which will not be disturbed unless it is clearly erroneous. See, *United States v. Santoro,* 302 F.3d 76, 80 (2d Cir. 2002). By its terms, the role adjustment enhancement does not apply if the abuse of trust is "included in the base offense level" or is a "specific offense characteristic." See, Guideline § 3B1.3.

The single count indictment in this case charged Satnarine Seebachan with bribery in violation of 18 U.S.C. § 666 (a)(1)(B). By the terms of the charge and indictment, Satnarine Seebachan was charged with abusing his position of trust and authority at Bronx Shepherds by soliciting bribes from a contractor with the intent that he receive improvements to his home in exchange for agreeing and/or promising that the contractor would obtain work contracts from Bronx Shepherds. Therefore, in this case, Satnarine Seebachan's abuse of trust was "included in the base offense level" of six for fraud and deceit. See, Guideline §2F1.1(a); *United States v. Broderson,* 67 F.3d 245 (2d Cir. 1995). As a result, the two (2) level adjustment is not warranted.

<u>Miscellaneous Objections</u>

1. In the section on Identifying Data, the P.S.R. inaccurately states Satnarine Seebachan's race (Asian not African American), his proper social security number and number of dependents (3 not 2).

2. Satnarine Seebachan objects to the total loss amount of $141,445, as set forth in paragraphs 18 and 24. See, argument set forth above.

3. Satnarine Seebachan objects to an adjustment for a role in the offense, as set forth in paragraphs 26 and the resulting total offense level as set forth in paragraph 31. See, argument set forth above.

4. Paragraph 43 is misleading as stated. Satnarine Seebachan entered the United States on a visitors visa in July 1986 and has made approximately 9 trips to and from Trinidad since 1994. It is there to give the impression that he returned only once since 1994 to attend a wedding in June 2012.

5. Paragraph 43 is misleading as stated. Satnarine Seebachan's green card was approved and received on December 1, 1989.

6. Paragraph 45 fails to inform the court of the seriousness of Rita Seebachan's disability. In a decision of the Social Security Administration, Office of Hearings and

8

Appeals dated March 2, 2005, Rita Seebachan was determined to be "disabled" within the meaning of the Social Security Act based upon an evidentiary finding which included the testimony of an orthopedic surgeon and other doctors who had been treating Ms. Seebachan since 2002. An accurate report on Rita Seebachan's condition is critical as her dependency on her husband and her inability to care for their 2 children in his absence, provides the basis for a downward departure and/or a sentence at variance with the guidelines.

7. Paragraph 46 is inaccurate as stated. Ciara Seebachan is presently 19 years old and attends John Jay Community College in New York City, New York.

8. Paragraph 64 is inaccurate as stated. Satnarine Seebachan began his employment at Bronx Shepherds on January 4, 1993.

9. Paragraph 66 is inaccurate as stated. Satnarine Seebachan worked for All State Construction from 1986 through 1992, not A-1 State as stated.

10. Paragraph 68 does not provide complete information. During the twelve (12) years that he was employed at T&Tech Trinidad and Tobago (a national power and utility company), Satnarine Seebachan was employed as an "A Class" lineman and later as an acting crew foreman working on power lines.

11. Paragraph 70 is inaccurate. Satnarine Seebachan's unemployment compensation benefits expired 2 weeks ago.

12. Paragraph 72 is misleading. Satnarine Seebachan did not deplete his 401K retirement plan to pay his attorney $175,000 in fees. The overwhelming majority of those funds, now depleted, were used by Satnarine Seebachan to support his family, after he was suspended without pay on July 17, 2012.

Applicable Statutory Sentences

The statutory maximum sentence under count one is 10 years pursuant to 18 U.S.C. § 666 (a)(1)(B). A conviction under count one carries a maximum period of three (3) years supervised release, a fine up to $250,000.00, along with a mandatory special assessment of $100.00. See, P.S.R., ¶¶ 77, 80, 84 and 85 pages 12 to 13.

The court may impose a sentence of probation for not less than one and no more than five years pursuant to 18 U.S.C. § 3561 (c)(1). See, 18 U.S.C.§3561(a) and (c)(1). See, P.S.R., ¶¶ 82 page 13.

9

## IV. Defendant's Sentencing Recommendation

Satnarine Seebachan requests that the court balance the competing interests required at sentencing and impose a non-custodial sentence at variance with the Guidelines pursuant to 18 U.S.C. 3553. The background, history and experiences of Satnarine Seebachan, including the aberrational nature of his involvement in the charged offense, along with his consistent employment, post arrest rehabilitation and the hardship that a custodial sentence would impose upon his family, is deserving of the court's leniency in imposing a non-custodial sentence.

<u>The Defendant and The Circumstances of the Offense</u>

Before the court, stands a man, who has an outstanding record of achievement and employment throughout his adult life. Satnarine Seebachan graduated from Chaguanas Senior High School in Trinidad in 1978 and has been consistently employment throughout his adult life. Upon his graduation from Chaguanas Senior High School, Satnarine Seebachan began his first career with T&Tech of Trinidad and Tobago, the nation's power utility company. Satnarine Seebachan began as a regular lineman but quickly rose through the ranks, based upon his talent and commitment. By the time Satnarine Seebachan decided to migrate to the United States in 1986, he had advanced to the position of an "A class" lineman and acting crew chief and foreman.

Upon his arrival in the United States on visitors visa in 1986, Satnarine Seebachan began working with All State Construction, a company owned by his uncle Cecil Gopee. Again, Satnarine Seebachan began at the bottom, learning the various light construction trades, including electrical, dry wall. By the time Satnarine Seebachan decided to take a position with Bronx Shepherds towards the end of 1992, Satnarine Seebachan was assisting his uncle in every aspect of the business operations. During this time period Satnarine Seebachan resided with his uncle Cecil Gopee and his aunt Basdaye Gopee in their two family house in the Bronx.

On January 4, 1993, Satnarine Seebachan began his employment at Bronx Shepherds. Satnarine Seebachan began his employment as a general maintenance worker, assigned to various redevelopment projects that Bronx Shepherds was working on at that time. During the time period that Satnarine Seebachan was employed at Bronx Shepherds, the not-for-profits annual budget rose from $400,000.00 in 1993 to over 14 million in 2013. Bronx Shepherds was, and remains, a dynamic and extraordinarily successful community based not-for-profit organization whose mission is to improve the lives of Bronx community residents through housing redevelopment and home revitalization.

Satnarine Seebachan has been an indispensable component of Bronx Shepherds over the past twenty (20) years. Satnarine Seebachan quickly advanced through the ranks at

Bronx Shepherds, distinguishing himself with a high level of intelligence, and a quiet but dynamic leadership style and extraordinary commitment to the success of the program. When Satnarine Seebachan walked into the meeting with federal prosecutors and investigators on April 15, 2010, and was posed questions of whether he was aware of any financial improprieties involving Bronx Shepherds, he was one of Bronx Shepherds top executive employees with nearly two decades of familiarity with every aspect of Bronx Shepherds fiscal budgetary operations and day to day activities.

Sadly the conviction in this case came about as a result of Satnarine Seebachan's abuse of his high ranking position at Bronx Shepherds. Satnarine Seebachan was convicted of accepting a bribe in his position of trust at Bronx Shepherds. Satnarine Seebachan used his position as the administrator of Weatherization Assistance Program and Home Program to solicit a contractor to perform free work at his Glen Cove home in exchange for helping the qualified contractor receive contracts under both programs.

On one hand it seems counterintuitive for a defendant to stand on his years of service as a basis for leniency at sentencing, when the abuse of that employment stands at the basis of the conduct of conviction. On the other hand, 18 U.S.C. § 3553(a) requires the court to consider, *inter alia*, the circumstances of the offense in imposing a sentence that is sufficient but not greater than necessary to reach sentencing goals of Congress - which includes the length and type of punishment. However, the circumstances of the offense in this case demonstrate that Satnarine Seebachan's criminal conduct was clearly an aberration in an otherwise remarkable life of personal and professional achievement, commitment to family and to the Bronx community.

In this case, the government, along with the New York State Inspector General's Office, conducted a long term comprehensive investigation into the financial operations of Bronx Shepherds, including extensive video surveillance. Prosecutors and investigators interviewed dozens of Bronx Shepherds employees and dozens of contractors who have worked closely with Satnarine Seebachan over the past two decades. It was clear that all of the employees hold Satnarine Seebachan in the highest regard for his expertise, commitment to the mission of Bronx Shepherds and his professionalism.

Several contractors were interviewed by the investigators in this case. At least three of the contractors interviewed informed the investigators that their workers were paid by Satnarine Seebachan to work at his Glen Cove home without any promise to be awarded contracts through Bronx Shepherds. The contractors informed the agents that Satnarine Seebachan contracted with the workers to work in their spare time and that Satnarine Seebachan paid the worker's directly for the services that the workers rendered. With the exception of Fotis Papadatis, not a single contractor stated that they were ever bribed or approached for a bribe by Satnarine Seebachan.

The long term investigation by the New York State Inspector's Office and later the federal prosecutors, which included the review of thousands of pages of documents, video surveillance, dozens of interviews with employees of Bronx Shepherds and contractors who were awarded contracts with Bronx Shepherds, demonstrates that the conduct of Satnarine Seebachan with Fotis Papadatis was an aberration in an otherwise exemplary career.

Hardship of Sentence of Incarceration Upon The Family

In this case, the P.S.R. does an excellent job in bringing critical facts about Satnarine Seebachan's life and family circumstances to the attention of the court for its determination of the proper sentence to impose in this case. The P.S.R. also provides critical information upon which this court can determine that, in this case, a custodial sentence will render an extraordinary hardship upon Satnarine Seebachan's family.

By decision and order of the Social Security Administration, Office of Hearings and Appeals dated March 2, 2005, Rita Seebachan was determined to be permanently "disabled" within the meaning of the Social Security Act. Rita Seebachan's permanent disability has not only rendered Satnarine Seebachan the sole financial provider for the family, but due to the extent of her disability, he is also the primary care giver to their two children.

There are no family members who could assume the responsibility of providing financial support and care for Rita Seebachan and their two children, were the court to impose a custodial sentence. See, P.S.R., ¶ 41 and 42, pages 6 and 7. Were the court to impose a sentence of incarceration, a close knit family would be destroyed.

Satnarine Seebachan is an extraordinary husband and father, who has provided an exceptional level commitment and devotion to maintaining his family, notwithstanding his wife's disability. Satnarine Seebachan cooks all the meals, does the shopping, the laundry and travels with his children to various activities after school and on weekends. In so doing, Satnarine Seebachan has merely continued his life long commitment to the success of his children.

As stated above, Rita and Satnarine Seebachan have two children, Ciara, age 19 and Devin, age 4. The commitment as parents of Rita and Satnarine Seebachan can be seen in academic success of Ciara and extraordinary promise of Devin.

As stated in the P.S.R., Ciara is in her second semester as a freshman at John Jay College in New York City. However, the P.S.R. fails to inform the court of the formidable academic success Ciara has enjoyed as a student. Ciara has been a honor student since elementary school years and graduated in the top ten percent of her high school graduating class. Ciara has consistently been a member of the Principal's Honor Roll, received Regents

Honors and outstanding grades in math and the sciences was named as a member to the National Honor Society from her freshman through senior years in high school, among many other certificates of achievement and scholastic honor.

Ciara commutes each day to John Jay College and lives at home with her parents. Ciara's freshman courses include Calculus, Biology and General Chemistry. Were the court to impose a prison sentence upon Satnarine Seebachan, Ciara's academic success would come to an end. As the court can determine from the P.S.R., when Satnarine Seebachan was fired from Bronx Shepherd's as a result of his conviction, the family lost it's primary source of income. The mortgage on the Glen Cove home is 19 months in arrears, totaling more than $95,000.00. Satnarine Seebachan has depleted all of his savings, and the family is without income to keep up with its expenses. Satnarine Seebachan's unemployment compensation benefits expired two weeks ago. The family presently has a negative month cash flow. See, P.S.R., ¶ 70, pages 10 and 11.

After a long search for employment, Satnarine Seebachan has been hired as construction manager with BBY Management Corporation, starting on Monday, April 28, 2014. This employment opportunity has come too late to save the families' Glen Cove home, as Rita and Satnarine Seebachan have placed the Glen Cove home on the market for sale. However, this employment opportunity provides an opportunity to keep the family from a total financial collapse. Satnarine Seebachan will face the imposition of a substantial restitution in this case. Satnarine Seebachan desperately wants his daughter to complete her education without interruption. Satnarine Seebachan recognizes that his conduct has placed his family in jeopardy, but nevertheless seeks leniency so that his family is not destroyed as a result of a single aberration in his life.

Devin, at age 4, is an extraordinarily gifted boy with a promising future, while he is not fully aware of the immanent peril facing his family, the loss of his father through incarceration would only serve to derail a promising boy's future at its inception. As stated above, Satnarine Seebachan is the primary care giver for his children and play a crucial and indispensable role in the life of his son. Incarceration would result in a devastating financial and emotional hardship.

Satnarine Seebachan has been an outstanding father and husband in an era where this court experiences on a daily basis the abandonment of family responsibility by offenders. Until his involvement in the bribery scheme that led to his arrest in this case, Satnarine Seebachan had always exercised responsible judgment. Notwithstanding a high level of commitment to Bronx Shephers, Satnarine Seebachan devoted meaningful time to his children. Rita and Satnarine Seebachan's efforts and commitment are reflected in the sustained success of Ciara and extraordinary potential of Devin.

As stated above, Satnarine Seebachan's conduct in this case represents a complete aberration for a man, in his 50's, who has always placed the interest, love and care of his wife and children first and foremost. By engaging in this bribery scheme, Satnarine Seebachan put the well being of his wife and children in jeopardy.

The arrest in this case has exposed Satnarine Seebachan to the reality of how precious his children are and how much they need his presence to succeed. Satnarine Seebachan is a man of quiet dignity who has exhibited a sustained commitment to his children. Satnarine Seebachan recognizes - even more so now - the importance of his presence to provide for the continued success and survival of his wife and children.

No Meaningful Alternatives For Care For The Children

While the incarceration of a parent always impacts a family, particularly the young children, there is no question that Satnarine Seebachan's incarceration will cause an even more devastating hardship upon his two school aged children. There is no other alternative for Satnarine Seebachan's children or his wife, who is permanently disabled.

Satnarine Seebachan prays that this court heavily consider the lives of his children, when deciding the type of sentence to impose, consistent with the court's mandate under the federal sentencing laws.

Post Arrest Conduct

As stated above, Satnarine Seebachan has consistently maintained employment since he graduated from high school in 1978 and has worked throughout his entire adult life. See, P.S.R., ¶ 61 through 69, pages 9 and 10. The arrest in this case resulted in his suspension, without payment of his annual salary of $140,000.00 per year.
See, P.S.R., ¶ 64 through 65, pages 9.

Upon his release on conditions of bail, Satnarine Seebachan has not engaged in conduct which has created a danger to the community and has actively sought employment since his conviction on September 23, 2013 and begins a new position as a management consultant on Monday, April 28, 2014.

### V. The Applicable Law

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court made clear that under *United States v. Booker*, 543 US 220 (2005), the sentencing guidelines remain a necessary starting point for determining a sentence, but cannot be the end of the court's analysis. Rather, the sentencing court must evaluate all the factors set forth in 18 U.S.C. § 3553(a).

The *Gall* Court expressly rejected the notion that only "extraordinary" circumstances can justify a sentence outside of the guidelines range, and also rejected "the use of a rigid mathematical formula that uses the percentages of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall,* 552 U.S. at 47.

In the *post-Booker* era, the sentencing court is required to impose a sentence that is "sufficient, but not greater than necessary" to achieve the sentencing objectives of Congress forth in 18 U.S.C. §3553(a)(2). Those objectives include, *inter alia*, adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. The ultimate goal of the sentencing court is to find just punishment by carefully balancing important public policy considerations along with the rehabilitative objectives of 18 U.S.C. § 3553(a).

Authority To Impose a Sentence Based upon Hardship To The Family

Satnarine Seebachan requests that the court consider the impact that a custodial sentence will have on the stability of his children.

In the pre-*Booker* era, hardship to the family was not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. The logic of this position was based upon the proposition that all families suffer when a beloved family member serves a period of incarceration. *United States v. Smith,* 331 F.3d 292, 294 (2d Cir. 2008). However, the Second Circuit found that in some rare cases, the presence of extraordinary family circumstances compelling, and therefore, a permissible basis for a sentence outside the guidelines. See, *United States v. Galante,* 111 F.3d 1029, 1035 (2d Cir. 1997); *United States v. Johnson,* 964 F.2d 124, 129-30 (2d Cir. 1992); *United States v. Johnson,* 964 F.2d 124, 129-30 (2d Cir.1992); *United States v. Alba,* 933 F.2d 1117, 1122 (2d Cir. 1991).[4]

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court invalidated the statutory provision, 18 U.S.C. § 3553 (b)(1), which made the application of the sentencing guidelines mandatory. See, *United States v. Booker,* 543 U. S., at 260–262. In the post *Booker* era, the Supreme Court has made it resoundingly clear, that in the appropriate case, the

---

[4] The Second Circuit did not support a deviation from the guidelines based upon family circumstances less compelling than those in *Galante, Johnson* and *Alba*. See, *United States v. Cutler*, 520 F.3d 136, 164-65 (2d. 2008). Especially where other relatives could meet the family's needs (*United States v. Madrigal*, 331 F.3d 258, 260 (2d Cir. 2003), or where the defendant's absence did not cause a "particularly severe" hardship (*United States v. Smith*, 331 F.3d 292, 294 (2d Cir. 2003)(defendant was not the sole care giver of the children, wife was employed and relatives nearby who could assist with child care) or the defendant no longer lived with his young children, his ex-wife was gainfully employed and child support payments would continue during incarceration (*United States v. Faria*, 161 F.3d 761, 762-63 (2d Cir. 1998).

court can impose a sentence at variance with the guidelines even in "*the mine run cases*". See, *Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). The Supreme Court specifically rejected the view that a sentence at variance requires "extraordinary" circumstances to determine whether a sentence outside the Sentencing Guidelines is justified.

Following the lead of the Supreme Court in the post-*Booker* era, the Second Circuit Court of Appeals recognized that the district court has the discretion to impose a sentence at variance with the guidelines based upon hardship to the family. *Cf.*, *United States v. Cutler*, 520 F.3d 136 (2008). As a result, there is ample Supreme Court and Second Circuit authority for the court to impose a sentence at variance with the Guidelines on the grounds of family hardship, without a finding that the hardship is extraordinary, as required in the pre-*Booker* era.

Long before the Sentencing Commission promulgated 5H1.6 (Amendment Effective 1991), several district court judges within the Second Circuit recognized that in some rare cases, the extraordinary harm that incarceration can impose upon a family warranted relief by way of a downward departure from the guidelines. See, *United States v. Handy*, 752 F.Supp. 561 (E.D.N.Y. 1990).

As in *Handy*, the case before the court involves a *genuine* application for a relief from the guidelines based upon the hardship incarceration would impose upon the family. It is also important to add that Satnarine Seebachan is not an ongoing danger or threat to the community, and with exception of the crimes charged herein, he has been a productive and viable member of society.

Satnarine Seebachan turns to the court with the hope that the court can impose a punishment that balances the interest of the public with the need for him to maintain his family. However, Satnarine Seebachan is profoundly aware that he has brought this situation upon himself and his family. Satnarine Seebachan only hopes and prays that the court will view his children's circumstances worthy of the court's sentencing discretion.

<u>Authority To Impose a Sentence Based Upon Aberrant Behavior</u>

In the pre-*Booker* era, before deciding whether to grant an eligible offender a downward departure under the "aberrant behavior" guideline, the court was required look to the totality of circumstances to determine whether the conduct considered is truly aberrant. *Zecevic v. United States Parole Commission*, 163 F.3d 731, 735-736 (2d Cir. 1998). This principle remains viable in the post-*Booker* era.

The term aberrant is Latin in origin and is derived from the root *aberrare* which

16

means to go astray, or to wander from the normal or usual way.  See, Miriam Webster's Collegiate Dictionary, Author & Innovation. The guidelines provide an elaborate definition of aberrant and when, under the guidelines, it should constitute a basis for a downward departure.  In effect, the guideline definition will apply, when, inter alia, the criminal occurrence represents a "marked deviation by the defendant from an otherwise law-abiding life." See Guideline § 5K2.20(b). As set forth above, the offending conduct in this case represents an aberration from the otherwise extraordinary life of Satnarine Seebachan, who made a horrendous error in judgment.

In our sentencing scheme, either under the federal sentencing guidelines or pursuant to 18 U.S.C. § 3553(a), an offender's prior history of bad conduct or criminal history is a factor relied upon by the court to determine the extent of punishment to impose and to forecast the likelihood of the repeat of the same conduct in the future.  Contrarily, where the defendant's conduct is aberrational in nature, and the offending conduct is truly a deviation, such factors likewise weigh heavily in court's determination of the length of sentence needed to protect the public from a repeat of such conduct in the future.

There are many times when the court, in a *close case*, decides to exercise the power of its discretion and impose a non-custodial sentence due to family hardship.  Satnarine Seebachan and his children are that deserving *close case*.  In this case, the ends of justice would warrant and support a non-custodial sentence or an intermitted sentence to be served on weekends, to help this family make it.  There is absolutely no question that the offending conduct in this case represents an aberration in the otherwise good life of a bright, talented, hardworking and committed man - and that factor should weigh heavily in the court's decision.

Rehabilitation and Redemption

In this case, a review of the life, history and background of Satnarine Seebachan strongly indicates that he is capable of true redemption and that a non-custodial sentence is appropriate to punish him and to protect the public from his future criminal conduct. In the pre-guidelines era, sentencing courts traditionally examined the defendant's past to determine whether the defending conduct was a deviation. Such a finding would naturally assist a court in fashioning the appropriate punishment for the offending conduct.   As once observed by Judge Marvin E. Frankel, who served on the Southern District bench many years ago:

> The defendant before us, who has moved for a reduction of sentence, is a man of 35.  He has no prior criminal record.  He is talented, gainfully employed, earnest in the discharge of family obligations, and entitled to hope for a bright, if unsung future.  He needs no 'rehabilitation' our prisons can

17

> offer. The likelihood that he will transgress again is as close to nil as we are ever able to predict. Vengeance, the greatest text tell us, is not for mortal judges. Why, then should such a man be sentenced to imprisonment at all?

*United States v. Braun*, 382 F.Supp. 214 (SDNY 1974)

In the absence of the now advisory provisions which often resulted in the mechanical adherence to the sentencing guidelines:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing a sentence.

See, 18 U.S.C. § 3661. The robotic application of the guidelines prevent the court from truly assessing the tremendous strength and character of Satnarine Seebachan, when determining the type and/or length of a sentence which is sufficient but not greater than necessary to achieve the sentencing objectives of the Congress in enacting 18 U.S.C. 3553.

In *Gall v. United States*, the Supreme Court observed that the defendant's post-offense conduct, his support of family and friends, his successful work ethic, combined with his lack of criminal history, his age at the time of the offense, *inter alia*, warranted a sentence of probation, although the Presentence Investigation Report recommended the imposition of a Guidelines sentence of 30 to 35 months. In this respect, the defendant in *Gall* is very similar to Satnarine Seebachan. As in *Gall*, Satnarine Seebachan has exemplary character and no criminal record preceding the charged offense.

In *Gall*, the court noted that the offender's "post-offense conduct indicates neither that he will return to criminal behavior nor that the defendant is a danger to society." The very same can be said of Satnarine Seebachan, whose post-offense conduct, along with his exemplary character, consistent support of his family, and determined work ethic combine to warrant a sentence of probation, rather than the months of imprisonment that the mandatory application of the guidelines would require.

In *Gall*, the Supreme Court recognized that while a sentence of imprisonment is qualitatively more severe than a probationary sentence of equal terms, a sentence of probation serves as powerful punishment, as the offender on probation is nonetheless subject to several standard conditions that substantially restrict their liberty. See, also, *United States v. Knights*, 534 U.S. 112, 119 (2001).

Satnarine Seebachan has begun his journey to seek redemption. Satnarine

Seebachan shall continue with his commitment to hard work and effort to provide a platform and environment for the academic achievement and emotional success of his children. Therefore, on behalf of a family that would be destroyed were the court to impose a custodial sentence, the defendant prays for a non-custodial sentence. There are no adults who could assume the responsibility of raising his children and providing for his disabled wife, were the court to impose a custodial sentence.

In this case, if the court were to consider the "nature and circumstances of the offense and the history and characteristics of the defendant," along with the other factors in 18 U.S.C. § 3553(a), it is apparent that a non-custodial sentence is sufficient, but not greater than necessary," to afford adequate deterrence to criminal conduct and to protect the public from further crimes of Satnarine Seebachan.

## VI. Conclusion

For all of the reasons set forth above, Satnarine Seebachan requests that the court impose a non-custodial sentence which would permit him the opportunity to continue to provide for the emotional and economic stability of his family. In this case, a non-custodial sentence would be sufficient but not greater than necessary to punish Satnarine Seebachan and to protect the public from his future criminal conduct.

Respectfully,

*Anthony L. Ricco*
Anthony L. Ricco

ALR/jr
cc: A.U.S.A. Carrie Heather Cohen (By Email & ECF)