UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

       - against -                                        Docket. No. 12 Cr.  505 (GBD)

SATNARINE SEEBACHAN,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**SENTENCING  MEMORANDUM (SUPPLEMENTAL LETTER)**

Anthony L. Ricco, Esq.
Attorney For Satnarine Seebachan
20 Vesey Street, Suite 400
New York, New York 10007
(212) 791-3919

Steven Z. Legon, Esq.
Of Counsel and On the Memorandum

# ANTHONY L. RICCO

*Attorney At Law*
20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007

TEL. (212) 791-3919   FAX. (212) 791-3940

STEVEN Z. LEGON, ESQ
OF COUNSEL

June 25, 2014

**FILED BY ECF**

Hon. George B. Daniels
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:  **United States v. Satnarine Seebachan**
      Docket No. 12 Cr. 505 (GBD)

Dear Judge Daniels:

This letter is written in response to the government's sentencing submission, which was filed on June 19, 2014.  Sentencing in this case is presently scheduled for Friday, June 27, 2014, at 12:45 p.m.

## I.  Argument in Response

In his initial sentencing submission, Satnarine "Barry" Seebachan raised the issue of hardship to his family, *inter alia*, as a basis for a non-custodial sentence or alternatively an intermitted sentence to be served on weekends, at variance with the guidelines, pursuant to the court's authority under *United States v. Booker*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553 (a).

In support of his request, Satnarine "Barry" Seebachan advised the court of the real life circumstances that face his wife and children.   Those circumstances, as corroborated by his long term financial records, include the following: (1) that he is the single financial contributor to his family; (2) that he has a daughter who is presently attending college with an "A" average; (3) that his wife is fully "disabled" and was determined to be unable to work by a 2005 decision of the Social Security Administration; (4) that his family mortgage payments were 18 months in arrears and that the family property is in imminent jeopardy of foreclosure; and (5) that without his financial contribution to support his family, a close-knit,  promising family would be destroyed.

In response to this request, which is based upon the real life hardship faced by Mr. Seebachan's wife and children, the government has raised several false claims in an attempt to distract the court from the meaningful consideration of the issue of hardship to the Seebachan family.

Since the government cannot refute the Social Security Administration's determination that Rita Seebachan is fully disabled and unable to work, the government has created a false issue. The government prosecutor states that the defense "presents no proof to this Court that, almost ten years after that determination, the defendant's wife still is fully disabled . . " The government raises this false issue, since the government has no reliable, trustworthy or accurate information or evidence that Rita Seebachan is not fully disabled from work as determined by a Judge of the Social Security Administration after conducting full evidentiary proceedings in 2005. Faced with such a predicament, the government has attempted to create and impose a false burden upon Rita Seebachan and defense counsel.

First, on March 2, 2005, Judge Linda A. Stagno, an Administrative Law Judge with the Social Security Administration, Office of Hearings and Appeals rendered a decision determining that Rita Seebachan was "disabled" within the meaning of the Social Security Act. In support of that decision, Judge Stagno made specific findings of fact and conclusions of law, after conducting a full evidentiary hearing.

The court specifically determined, *inter alia*:

4.    The claimant lacks the residual functional capacity to perform even sedentary work because of persistent and severe neck, left shoulder and left elbow pain, resulting in an inability to lift/carry even 10 pounds and, during an 8-hour work day, to sit even 2 hours or stand/walk even 2 hours.

5.    The claimant's exertional limitations preclude her from performing her past relevant work and significantly erode her remaining occupational base for sedentary work to the extent that she is unable to engage in any alternative substantial gainful activity existing in significant numbers in the national economy.

6.    The claimant has been disabled, within the framework of the Medical-Vocational Guidelines in Appendix 2, Subpart P, Part 404 of the Regulations since March 8, 2002.

2

See, *The Findings and Decision,* dated March 2, 2005, pages 5-6 (Attached hereto).

It is significant that when Judge Stagno issued her decision, Rita Seebachan had been disabled from work for three (3) years, without any improvement. Indeed, the Judge Stagno's findings were based upon medical testimony of an orthopedic surgeon and his significant diagnostic findings that Rita Seebachan's condition was permanent and resulted in both her full disability and inability to work.

The government does not offer any medical evidence to dispute the findings and conclusions of law reached by Judge Stagno, because no such evidence exists. Instead, the government has attempted to impose a false burden by demanding that the defense prove that the condition remains unchanged. The government is aware that Rita Seebachan continues to receive her full disability payments, but is unable to proffer any evidence that would contradict the judicial determination of Judge Stagno and Rita Seebachan's continued receipt of her full disability benefits. (See, attached notice from the Social Security Administration setting forth the benefits for the year 2014).

The un-controverted judicial findings of Judge Stagno and the continued receipt of benefits by Rita Seebachan to date is proof that corroborates the hardship raised by Barry Seebachan, as it relates to the families inability to meet it's basic financial needs.

Misleading Statements Filed By the Government

In the absence of proffering any medical evidence that Rita Seebachan is no longer disabled and unable to work, the government has resorted to duplicity and presenting information in a false and misleading manner.

The government proffers materially false information to the court, which it claims supports a finding that Rita Seebachan is no longer disabled from working. In the absence of medical documentation or testimony, the government claims that online social media postings (Facebook, You Tube videos, and others) show Rita Seebachan "leading an active and productive life with no evidence of any back impairment, injury or constant pain."

The government further states that family photographs reveal Rita Seebachan engaged in such activities as driving an automobile, and sipping champagne at the pool in her backyard.

With these observations, the government - in its zeal to seek incarceration by any means necessary - fails to recognize the meaning of the disability finding by Judge Stagno. Specifically, Judge Stagno determined that Rita Seebachan was disabled from work within the meaning of the Disability Act. This finding did not mean that Rita Seebachan could not (1) drive an automobile; (2) sip champagne sitting by her family pool; (3) travel on family vacations; (4) go shopping; or (5) try to live an active, productive life, notwithstanding her unfortunate disability. Each one of the claimed observations raised

by the government, is entirely consistent with the findings of Judge Stagno.

Barry Seebachan wants the court to know note that despite her disability, Rita Seebachan tries very hard each day and in every aspect, to remain a loving, supportive and active wife and mother. Judge Stagno's finding was that Rita Seebachan disability within the meaning of the Social Security Administration's Act meant that she was unable to work. Judge Stagno's determination did not mean that Rita Seebachan had to withdraw from life and participation with her family. Judge Stagno's findings were specific.

Rita Seebachan, like many American's who suffer from disability, has attempted to live a dignified life and to engage society and her family responsibilities and other pleasures of life. For example, Rita Seebachan remains a wife and dutiful loving and compassionate mother to her children. In fact, during his disability, Rita Seebachan gave birth to a son Devin, who is presently five (5) years of age. There is nothing about Judge Stagno's findings which inferred or implied that Rita Seebachan could not give birth and perform many of the duties associated with being a mother.

There is nothing about Judge Stagno's findings of fact which infer or imply that Rita Seebachan could not travel and go on family vacations.[1]

The government prosecutor's narrow view of the meaning of a disability is simply at odds with the Department of Justice's position which has strongly advocated the rights of American's suffering from disabilities be respected and to permitted to engage in all aspects of life. There are many Americans who suffer from permanent disabilities who pursue active lives. Many disabled Americans have children, travel, enjoy swimming, drinking, some even participate in sports on a collegiate and Olympic levels. In this day and age, a disabled American should not be humiliated nor the standard's lowered as a result of the conviction of a family member.

Rita Seebachan has embraced her role as a mother and has a meaningful relationship with her husband and children. She does as much as she can, when she can. For example, although Rita Seebachan assists, Barry Seebachan takes sole responsibility for many domestic chores, including any heavy lifting around the house, heavy cleaning, and including preparing all of the family's meals.

False Statements Filed By the Government

Lastly, in the government's desperation to marginalize the clear hardship faced by the Seebachan family, it claims that during the course of the investigation its agents

---

[1]    In fact, during the trial the court may recall that the government sought to introduce this evidence as part of its case-in-chief. However, in denying the application, the court raised a simple point with the government: that disabled people do travel.

4

observed Rita Seebachan "climb into her Hummer without incident" and that she was observed lifting heavy objects.    On the score, the government has descended into misleading word manipulation, and has provided inaccurate and outright false statements to defeat a worthy application based upon hardship.

As a result of the Rule 16 discovery materials that were provided in this case, defense counsel discovered that during the course of the investigation into Bronx Shepherds, investigators did, in fact, follow and conduct video surveillance on Rita Seebachan.   Although Rita Seebachan has never been an employee of Bronx Shepherds, nor in any manner connected to the affairs of Bronx Shepherds, she became the target of investigative surveillance participating in her daily activities.

Unbeknownst to Rita and Barry Seebachan, they were followed and recorded on video.   During one such occasion that occurred on December 17, 2009, Rita and Barry Seebachan were videotaped arriving at a shopping mall, eating lunch in a local restaurant and then followed while shopping at Babies R Us and Bed Bath and Beyond stores.

The government's statement that Rita Seebachan was observed lifting heavy objects during this observation, "such as a baby car seat" is totally and completely false.   In the video surveillance, Barry Seebachan is observed removing from the driver's side and rear compartment of the vehicle, the couple's infant son Devin, who was sitting in a car seat.

It is Barry Seebachan (not Rita Seebachan) who is observed removing the stroller from rear compartment of the vehicle.    It is Barry Seebachan (not Rita Seebachan) who opens and unfolds the stroller, removes the baby from the rear driver-side of the vehicle, and placing the baby (and car seat) into the stroller.   The videotape clearly shows Rita Seebachan existing the vehicle from the passenger side only after Barry Seebachan has removed the baby and the car seat from the vehicle.

Rita Seebachan is observed, throughout, pushing the stroller - a task which she is quite capable of performing, completely consistent with findings of Judge Stagno. This court will observe that Judge Stagno made a determination that Rita Seebachan has "*limited use of her upper extremities for pushing and pulling*", not that she has no use at all.

During the shopping inside Babies R Us, Rita and Barry Seebachan are observed shopping for a child car seat. They are clearly observed walking through various aisles and examining child car seats which are displayed on a merchandise shelf.  At no time, does Rita Seebachan ever remove or lift any child seat from a merchandise shelf while they are shopping.   To the contrary, it is Barry Seebachan who is clearly observed touching and comparing the various car seats.   At no time does Barry Seebachan remove or lift any of the child seats from the merchandise shelves.

Upon returning to the vehicle, videotape records Rita Seebachan entering the vehicle

5

from the passenger side.  Although the government claims that she "climbs" into the vehicle, Rita Seebachan's actual entry is completely blocked and obscured by the vehicle as a result of positioning and the agent's camera angle.  The so-called "climb" is simply not observable.  More importantly, however, Rita Seebachan does not transfer any of the items from the shopping cart into the vehicle nor does she lift and place the baby back into the vehicle.   This work is all done by Barry Seebachan.

The videotape clearly records that it was Barry Seebachan (not Rita Seebachan) who removes the baby (car seat) from the stroller and placed the baby into the vehicle on the rear driver's side.  Rita Seebachan is not present, and is observed already inside the vehicle when Barry Seebachan puts the baby (who remains in the car seat) back into the vehicle. Barry Seebachan is then observed folding the stroller and placing it inside the rear compartment of the vehicle.  Finally, it is Barry Seebachan who is observed removing all of the items from the shopping cart into the rear compartment of the vehicle.  Not a single item is removed from the shopping cart by Rita Seebachan, who is already seated inside the vehicle, while Barry Seebachan is packing the vehicle.

The government's claim that Rita Seebachan was observed carrying a car seat is completely  false and is not supported by the video recording.  All that Rita Seebachan is observed carrying is a light weight baby diaper bag (containing diapers and bottles), and later, a plastic doggy bag with leftover food from lunch that she was taking home.  The claim that Rita Seebachan was observed lifting heavy objects - which the government proclaims calls her "hardship" into question - is based upon a total falsehood.

The defense invites the court to review the videotape in order to make its own determination. While it is unclear to defense counsel why a government investigators were following and recording Rita and Barry Seebachan inside Babies R Us in connection with their investigation into Bronx Shepherds, the defense is thankful that there is a video recording which totally exposes the falsehood of the government's claims.  Without such video evidence this court would have been had no reason to doubt the reliability of the government's claims (false) that Rita Seebachan was observed carrying a car seat and lifting other heavy objects during this surveillance.

## Defense Request a Fatico Hearing

The government has raised several other misleading claims in response to Barry Seebachan's sentencing submission.   On the issue of the hardship or any other matter subject to a factual dispute, Barry Seebachan requests a *Fatico* hearing.  In this way, the court can reach its determination based upon medical testimony; not based upon Facebook pictures or unsupported statements made by the government prosecutor.

## II.  Conclusion

In this case, the government refuses to recognize that Barry Seebachan's wife and

children shall truly face a devastating economic hardship, should the court impose a custodial sentence. In order to defeat the compelling truthful representations made by the defense relating to the unfortunate financial circumstances faced by the Seebachan family, the government resorted to making materially false and misleading statements to the court.

The Second Circuit has long recognized that there are those rare occasions when an economic hardship to dependant family members provides a basis to impose a non-custodial sentence. The circumstances faced by Rita Seebachan and the children compelling and are deserving of consideration by this court at the time sentencing without resort to false and misleading statements. The Seebachan family home is presently on the market for sale and is in deep arrears. Barry Seebachan has recently found employment and is working. His present job is too late to save the family home but will serve to keep his family in tact and his children in school.

For all of the reasons set forth above, as well as in his sentencing submission of April 23, 2014, Barry Seebachan requests that the court impose a non-custodial sentence which would permit him the opportunity to continue to provide for the emotional and economic stability of his family. In this case, a non-custodial sentence or an intermitted sentence to be served on weekends, at variance with the guidelines, would be sufficient but not greater than necessary to punish Satnarine Seebachan and to protect the public from his future criminal conduct.

In the event that there are any disputed factual issues that are material to sentencing Satnarine Seebachan requests that the court grant a *Fatico* Hearing.

Respectfully,

*Anthony L. Ricco*
Anthony L. Ricco

ALR/jr
cc:  A.U.S.A.  Carrie Heather Cohen (By Email & ECF)

**SOCIAL SECURITY ADMINISTRATION**

Refer To: 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

Office of Hearings and Appeals
SSA/OHA Hearing Office
375 North Broadway
3rd Floor
Jericho, NY 11753

Date:

MAR 2 2005

Rita Seebachan
596 Valmont Pl
Elmont, NY 11003

**NOTICE OF DECISION – FULLY FAVORABLE**

I have made the enclosed decision in your case. Please read this notice and the decision carefully.

**This Decision is Fully Favorable To You**

Another office will process the decision and send you a letter about your benefits. Your local Social Security office or another may first ask you for more information. If you do not hear anything for 60 days, contact your local office.

**The Appeals Council May Review The Decision On Its Own**

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review at the Council's own motion could make the decision less favorable or unfavorable to you.

**If You Disagree With The Decision**

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative, if you choose to appoint one, must request the Appeals Council to review the decision. You must make the request in writing. You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office. You may also mail your request right to the **Appeals Council, Office of Hearings and Appeals, 5107 Leesburg Pike, Falls Church, VA 22041-3255**. Please put the Social Security number shown above on any appeal you file.

See Next Page

Rita Seebachan (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)                                    Page 2 of 3

**Time To File An Appeal**

To file an appeal, you must file your request for review **within 60 days** from the date you get this notice.

The Appeals Council assumes you got the notice 5 days after the date shown above unless you show you did not get it within the 5-day period. The Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**Time To Submit New Evidence**

You should submit any new evidence you wish to the Appeals Council to consider **with** your request for review.

**How An Appeal Works**

Our regulations state the rules the Appeals Council applies to decide when and how to review a case. These rules appear in the Code of Federal Regulations, Title 20, Chapter III, Part 404, Subpart J.

If you file an appeal, the Council will consider all of my decision, even the parts with which you agree. The Council may review your case for any reason. It **will** review your case if one of the reasons for review listed in our regulations exists. Section 404.970 of the regulations lists these reasons.

Requesting review places the entire record of your case before the Council. Review can make any part of my decision more or less favorable or unfavorable to you.

On review, the Council may itself consider the issues and decide your case. The Council may also send it back to an Administrative Law Judge for a new decision.

**If No Appeal And No Appeals Council Review**

If you do not appeal and the Council does not review my decision on its own motion, you will not have a right to court review. My decision will be a final decision that can be changed only under special rules.

See Next Page

Rita Seebachan (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)                                                        Page 3 of 3

**If You Have Any Questions**

If you have any questions, you may call, write or visit any Social Security office. If you visit an office, please bring this notice and decision with you. The telephone number of the local office that serves your area is (516)747-2234. Its address is Social Security, 211 Station Rd, 5th Floor, Mineola, NY 11501-4226.

Rita Seebachan (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)

**If You Have Any Questions**

If you have any questions, you may call, write or visit any Social Security office. If you visit an office, please bring this notice and decision with you. The telephone number of the local office that serves your area is (516)747-2234. Its address is Social Security, 211 Station Rd, 5th Floor, Mineola, NY 11501-4226.

# SOCIAL SECURITY ADMINISTRATION
## DECISION

**IN THE CASE OF**                                            **CLAIM FOR**

Rita Seebachan                                            Period of Disability and
_____                                  Disability Insurance Benefits
(Claimant)                                               _____



_____                                  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
(Wage Earner)                                            _____
                                                          (Social Security Number)


This case is before the Administrative Law Judge on a request for hearing timely filed on August 24, 2004. On January 13, 2005, contact was made with the claimant's attorney, David Stand, Esq. of the Law Offices of Neil Moldovan, P.C., as a result of which additional evidence was secured. After careful consideration of the entire record, I conclude that a fully favorable decision is warranted. Therefore, the following decision is being issued based on the evidence of record.

## ISSUES

The issue to be determined in this case is whether the claimant is "disabled" within the meaning of the Social Security Act.

## EVALUATION

Upon evaluation of the evidence, the Administrative Law Judge finds that the claimant is "disabled" within the meaning of the Social Security Act.

The medical evidence reveals that the claimant, a 34-year-old high school graduate with work experience as a hairdresser, billing clerk and receptionist/administrative assistant, is impaired by left shoulder, neck and left elbow derangements, which result in persistent and severe pain of the affected areas, which prevents the claimant – in an 8-hour workday – from sitting even 2 hours; standing/walking even 2 hours and from lifting/carrying even 10 pounds with limited use of the upper extremities for pushing/pulling. The foregoing is based upon the findings and the opinion/assessment of Dr. Richard Parker, an orthopedic surgeon whom among other doctors at South Nassau Orthopedic Surgery and Sports Medicine has been treating the claimant since May 2002, as supplemented by an MRI of the cervical spine in June 2002 which showed disc

Rita Seebachan 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

2

herniations at C3-4, C4-5 and C5-5; an MRI of the left elbow in December 2002 which revealed extensor tendinosis with superimposed partial tear posteriorly and an MRI of the left shoulder in March 2003 which revealed a partial bursal surface tear of the supraspinatus tendon and severe downsloping of the lateral acromion with focal contact and deformity of the bursal margin of the supraspinatus tendon.   Consistent with the above are reports from Dr. Allan Hausknecht, a neurologist, containing diagnoses of post-traumatic cervical radiculopathy, derangement, sprain, myofascial pain syndrome; possible ulnar paresthesias and derangement of the left elbow and an opinion of disability.

Deference is accorded to Dr. Parker's medical opinion about the nature and severity of the claimant's muskuloskeletal impairment considering the length of the treatment relationship and the frequency of his examinations, the existence of significant clinical and diagnostic findings (including numerous abnormal MRI studies) which support the doctor's opinion, and the doctor's specialization in the medical field, i.e., orthopedic surgery, in which said impairment lies (See 20 CFR 404.1527(d)).

Consequently, the Administrative Law Judge finds that the claimant cannot perform her past relevant work and her remaining occupational base for sedentary work is so significantly eroded as to preclude performance of any alternative substantial gainful activity existing in significant numbers in the national economy.   Accordingly, the claimant has been disabled, within the framework of the Medical-Vocational Guidelines in Appendix 2, Subpart P, Part 404 of the Regulations, since March 8, 2002, the date she alleges she became unable to work.

Little probative weight is accorded to the assessment of physical capacities offered by State Agency medical consultants, since said physicians neither examined the claimant nor had an opportunity to consider all the medical evidence currently contained in the record.   Likewise, I afford greater probative weight to the assessments/opinions offered by the claimant's long-time treating orthopedist, Dr. Parker, than to those offered by various consulting physicians who only examined the claimant once.

FINDINGS

After careful consideration of all the evidence of record, the Administrative Law Judge makes the following findings of fact and conclusions of law:

1.   The claimant has met the special earnings requirements of Title II of the Social Security Act at all relevant times.

2.   The claimant has not engaged in substantial gainful activity since March 8, 2002, the date he alleges he became unable to work.

3.   The medical evidence establishes that the claimant is severely impaired by cervical spine, left shoulder and left elbow derangements but does not establish medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Part 404 of the Regulations.

Rita Seebachan 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

3

4.    The claimant lacks the residual functional capacity to perform even sedentary work because of persistent and severe neck, left shoulder and left elbow pain, resulting in an inability to lift/carry even 10 pounds and, during an 8-hour workday, to sit even 2 hours or stand/walk even 2 hours.

5.    The claimant's exertional limitations preclude her from performing her past relevant work and significantly erode her remaining occupational base for sedentary work to the extent that she is unable to engage in any alternative substantial gainful activity existing in significant numbers in the national economy.

6.    The claimant has been disabled, within the framework of the Medical-Vocational Guidelines in Appendix 2, Subpart P, Part 404 of the Regulations since March 8, 2002.

## DECISION

It is the decision of the Administrative Law Judge that, based on the application filed on August 18, 2003, the claimant is entitled to a period of disability commencing on March 8, 2002 and to disability insurance benefits under Sections 216(i) and 223, respectively of the Social Security Act.

Linda A. Stagno
Administrative Law Judge

Date    MAR    2 2005

# Social Security Administration

||··||||·||·||·||··||·||··||·||·||··||·||·||··||··||·||·||

006339 1 MB 0.405 0024 LR M1701 1121 01

RITA SEEBACHAN
40 HIGHFILED RD
GLEN COVE NY 11542-3518

Date: November 27, 2013
Claim Number: 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HA

Your Social Security benefits will increase by 1.5 percent in 2014 because of a rise in the cost of living. The Social Security Act requires some people to pay higher premiums for their Medicare Part B (Medical Insurance) and their prescription drug coverage based on their income. Because of your income, your premiums will be increased. The information in this notice about your premium is for 2014 only.

If you currently do not have Medicare Part B or prescription drug coverage and enroll in 2014, those premiums will also be increased based on your income.

## How Much Social Security Will I Get?

- Your new 2014 monthly benefit
  amount before deductions is: $1,087.80

- Your 2014 *monthly deduction for the*
  Medicare Part B Premium is: - $209.80

  - $104.90 for the standard Medicare premium, plus

  - $104.90 for the income-related monthly adjustment amount based on your 2012 income tax return

- Your benefit amount after deductions
  that will be deposited into your bank account
  or sent in your check on January 8, 2014 is: $878.00



C                              See Next Page